Bentley J. Tolk (6665)
David P. Mooers-Putzer (14729)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

Attorneys for Defendants

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| WILLIAM D., individually and on behalf of S.D., a minor,<br><br>      Plaintiffs,<br><br>vs.<br><br><br>UNITED HEALTHCARE INSURANCE COMPANY, and the FORTIVE CORPORATION & SUBSIDIARIES MEDICAL PLAN,<br><br>      Defendants. | **MOTION TO DISMISS COUNT II OF PLAINTIFFS' COMPLAINT, AND SUPPORTING MEMORANDUM**<br><br>**(Hearing Requested)**<br><br>Case No. 2:19-cv-00590-DB<br><br>Judge Dee Benson |

---

## RELIEF SOUGHT AND GROUNDS FOR THE MOTION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and DUCivR7-1,

Defendants UnitedHealthcare Insurance Company ("UnitedHealthcare") and the Fortive

Corporation & Subsidiaries Medical Plan (the "Plan") hereby move the Court to dismiss with

prejudice the Second Cause of Action ("Count II") of the Complaint [Dkt. 2] ("Complaint") filed by Plaintiffs William D. ("William") and S.D. ("S.D."), (collectively, "Plaintiffs").

Count II purports to assert a claim for equitable relief against UnitedHealthcare and the Plan under 29 U.S.C. § 1132(a)(3) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA"), for alleged violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA" or "Parity Act"). (Compl. ¶¶ 38-51.) Count II fails as a matter of law, however, because Plaintiffs fail to plausibly allege a Parity Act violation.

As detailed below, the Complaint fails to plausibly allege *any* of the elements necessary to plead a violation of the Parity Act: (1) the Complaint does not identify a specific limitation in the employee welfare benefit plan at issue; (2) the Complaint does not adequately plead the existence of a covered medical or surgical practice that is analogous to residential treatment; and (3) the Complaint fails to identify a disparity in the limitation criteria applicable to an analogous medical or surgical service. Instead, Count II rests solely on threadbare and conclusory recitations of the Parity Act's statutory language. In addition, Count II fails to allege any facts to support an "as-applied" violation of the Parity Act.

Moreover, despite cursory references to purported equitable relief, Count II is duplicative of and seeks the same relief as the First Cause of Action ("Count I") in Plaintiffs' Complaint, which seeks to recover benefits for S.D.'s residential treatment. Nothing in the Complaint shows that any equitable remedy is appropriate here. In any case, adequate relief is available under § 1132(a)(1)(B); therefore no further relief is "appropriate" under § 1132(a)(3). Count II is nothing more than a disguised claim for benefits and must be dismissed with prejudice.

## SUMMARY OF COMPLAINT ALLEGATIONS

In the Complaint, Plaintiffs allege[1] as follows:

**Parties.**

During the relevant time period, William was a participant in the Plan, and S.D. was a beneficiary of the Plan. (Compl. ¶ 3.) The Plan is a self-funded employee welfare benefit plan governed by ERISA. (*Id.*) S.D. received "medical care and treatment" at Solstice West ("Solstice"), a mental health residential treatment facility located in Utah. (*Id.* ¶ 4.)

**Treatment at Solstice.**

S.D. was admitted to Solstice on May 19, 2017, with UnitedHealthcare's approval. (*Id.* ¶ 16.) In a July 17, 2017 letter, UnitedHealthcare denied payment for S.D.'s treatment at Solstice for on and after July 10, 2017. (*Id.* ¶ 17.) Specifically, UnitedHealthcare determined:

> Your child was admitted for treatment of depression. After talking with your child's doctor's designee, it is noted your child has made progress and that your child's condition no longer meets Guidelines for further coverage of treatment in this setting. She is no longer endangering the welfare of herself or others. She is able to understand and participate in her care. She is attending groups and taking medications as prescribed. Her acute suicidal thoughts have resolved. No recent medication changes have occurred. She does not appear to require 24 hour nursing care and supervision for her remaining symptoms and can continue her recovery in a less restrictive setting. Your child could continue care in the Mental Health Intensive Outpatient Program setting.

(*Id.*) William submitted a level one appeal on January 10, 2018 for the denial of S.D.'s treatment at Solstice. (*Id.* ¶¶ 18–19.) In response, UnitedHealthcare in a February 12, 2018 letter upheld

---

[1] Solely for purposes of this Motion, Defendants adopt the well-pled facts in the Complaint as true and view them in the light most favorable to Plaintiffs, as the Court must do in analyzing this Motion. *See Jordan–Arapahoe, LLP v. Bd. of Cnty. Comm'rs of Cnty. of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011). Defendants do not concede that any of those allegations are accurate, and Defendants reserve all rights to contest Plaintiffs' factual allegations on the merits and outside of the motion to dismiss context.

the denial of payment for S.D.'s treatment at Solstice. (*Id.* ¶ 20.) Specifically, UnitedHealthcare found:

> The non-coverage determination for residential level of care will be upheld on 07/10/2017 and forward. This is based on Optum Level of Care Guidelines for Residential Treatment of Mental Health Disorders and the Optum Common Criteria and Clinical Best Practices for All Levels of Care Level of Care Guidelines. Your daughter was doing better. She was working hard. She had made good progress. She was cooperative. She was not wanting to harm herself or others. It seems that her care could have continued in a less intensive setting.

(*Id.*)

William submitted a level two appeal on August 6, 2018. (*Id.* ¶ 21.) Pursuant to an October 9, 2018 letter, UnitedHealthcare upheld its denial of additional treatment for S.D. at Solstice and stated, in part: "Your child could have continued care in the MENTAL HEALTH OUTPATIENT setting." (*Id.* ¶ 30.)

**Plaintiffs' Claims.**

Plaintiffs allege that the "denial of benefits" for S.D's treatment was a "breach of contract" that caused William to "incur medical expenses that should have been paid by the Plan in an amount totaling over $120,000." (*Id.* ¶ 32.) Plaintiffs filed this lawsuit against UnitedHealthcare and the Plan on August 22, 2019, asserting two causes of action. (*Id.* ¶¶ 34–51.) Count I seeks to recover plan benefits under 29 U.S.C. § 1132(a)(1)(B) based upon UnitedHealthcare and the Plan's alleged "violation of the terms of the Plan and its medical necessity criteria" in denying claims for S.D.'s treatment at Solstice. (*Id.* ¶¶ 34–37.) Count II purportedly seeks equitable relief for alleged violations of the Parity Act under 29 U.S.C. § 1132(a)(3) based on UnitedHealthcare and the Plan's alleged improper denial of claims for S.D.'s treatment at Solstice. (*Id.* ¶¶ 38–51.)

## RELEVANT PLAN DOCUMENT TERMS

The relevant provisions of the Plan document, a copy of which is attached hereto as

Exhibit "1" to Exhibit "A,"[2] are set forth below:[3]

**Section 14:** *Glossary* . . .

**Covered Health Services** - those health services, including services, supplies, or Pharmaceutical Products, which Danaher Corporation[4] determines to be:

- provided for the purpose of preventing, diagnosing or treating Sickness, Injury, Mental Illness, Substance-Related and Addictive Disorders, or their symptoms;
- consistent with nationally recognized scientific evidence as available, and prevailing medical standards and clinical guidelines as described below;
- not provided for the convenience of the Covered Person, Physician, facility or any other person;
- included in Sections 5 and 6, *Plan Highlights* and *Additional Coverage Details*;
- provided to a Covered Person who meets the Plan's eligibility requirements, as described under *Eligibility for Coverage* in Section 2, *Introduction*; and
- not identified in Section 8, *Exclusions: What the Medical Plan Will Not Cover*.

In applying the above definition, "scientific evidence" and "prevailing medical standards and clinical guidelines" have the following meanings:

---

[2] Since the Complaint references the Plan document, the Court may consider it in determining this motion. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (noting that in evaluating a Rule 12(b)(6) motion to dismiss, a court may consider documents that are referred to in the complaint and central to the plaintiff's claim).

[3] Exhibit "A" is the Declaration of Alexander Marsh, Jr., to which is attached as Exhibit "1" an undisputed, authentic copy of the 2017 version of the Summary Plan Description of the Danaher Corporation Medical Plans for Active Associates (also referred to as the "Plan"). Defendants are aware that S.D.'s treatment at Solstice extended into 2018. (Compl. ¶ 4.) However, there are no relevant substantive differences between the 2017 and 2018 versions of the Plan document. (Exh. "A" at ¶ 5.) Therefore, because UnitedHealthcare and the Plan denied coverage for S.D.'s treatment at Solstice beginning in 2017, the 2017 Plan document has been attached as Exhibit "1" to Exhibit "A."

[4] Due to a spin-off from Danaher Corporation, Fortive Corporation is a separate company and continued the prior plan terms during the relevant time frame.

- "scientific evidence" means the results of controlled Clinical Trials or other studies published in peer-reviewed, medical literature generally recognized by the relevant medical specialty community; and
- "prevailing medical standards and clinical guidelines" means nationally recognized professional standards of care including, but not limited to, national consensus statements, nationally recognized clinical guidelines, and national specialty society guidelines.

The Claims Administrator maintains clinical protocols that describe the scientific evidence, prevailing medical standards and clinical guidelines supporting its determinations regarding specific services. You can access these clinical protocols (as revised from time to time) on www.myuhc.com or by calling the number on the back of your ID card. This information is available to Physicians and other health care professionals on UnitedHealthcareOnline.

(Exh. "1" to Exh. "A" at 121, 123-124.)

### Section 8 – Exclusions: What the Medical Plan Will Not Cover

### What this section includes:
- Services, supplies and treatments that are not Covered Health Services, except as may be specifically provided for in Section 6, *Additional Coverage Details*. . . .

**. . .**

### All Other Exclusions
**. . .**
- expenses for health services and supplies:
  - That do not meet the definition of a Covered Health Service, as defined in Section 14, *Glossary*. . . .

(*Id.* at 76, 86.)

### Section 6 – Additional Coverage Details

### What this section includes:
- Covered Health Services for which the Plan pays Benefits . . .

### Mental Health Services

Mental Health Services include those received on an inpatient or outpatient basis in a Hospital and an Alternate Facility or in a provider's office. All services must be provided by or under the direction of a properly qualified behavioral health provider.

Benefits include the following levels of care:

- Inpatient treatment.
- Residential Treatment.
- Partial Hospitalization/Day Treatment.
- Intensive Outpatient Treatment.
- Outpatient treatment.

Services include the following:

- Diagnostic evaluations, assessment and treatment planning.
- Treatment and/or procedures.
- Medication management and other associated treatments.
- Individual, family and group therapy.
- Provider-based case management services.
- Crisis intervention.

(*Id.* at 32, 48.)

## **ARGUMENT**

### I.      **RULE 12(b)(6) PLAUSIBILITY STANDARD.**

"Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted." *IHC Health Servs., Inc. v. Tyco Integrated Sec., LLC*, No. 2:17-CV-00747-DN, 2018 WL 3429932, at *1 (D. Utah July 16, 2018) (citing *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). In addition, to withstand a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A complaint that merely alleges a "possible" or "conceivable" claim is insufficient. *Iqbal*, 556 U.S. at 679–80 (quoting *Twombly*, 550 U.S. at 570); *see also Warnick*

7

*v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018). A plaintiff must allege sufficient factual matter that shows he or she is entitled to relief. *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Moreover, although pleadings at the motion to dismiss stage are liberally construed, before accepting a plaintiff's allegations as true, "they must be *well-pleaded* allegations." *Warnick,* 895 F.3d at 751 (emphasis in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts." *Id.* (internal quotations omitted) (quoting *Iqbal*, 556 U.S. at 678).

**II.     COUNT II FAILS TO STATE A PLAUSIBLE CLAIM FOR VIOLATION OF THE PARITY ACT.**

Count II should be dismissed in its entirety with prejudice because Plaintiffs have failed to allege facts to establish a Parity Act violation. To plead a violation of the Parity Act, a plaintiff must plausibly allege *facts* that: (1) identify a specific limitation in the Plan applicable to mental health treatment; (2) identify services in the medical or surgical arena under the Plan that are analogous to the specific mental health services at issue; and (3) plausibly allege a disparity in the limitation criteria applicable to that analogous medical or surgical service and mental health treatment. *See Peter E. v. United Healthcare Servs., Inc.*, Case No. 2:17-cv-00435-DN, 2019 WL 3253787, *3 (D. Utah July 19, 2019); *Anne M. v. United Behavioral Health*, Case No. 2:18-CV-808 TS, 2019 WL 1989644, *3 (D. Utah May 6, 2019); *Roy C. v. Aetna Life Ins. Co.*, No. 2:17-CV-1216, 2018 WL 4511972, *3 (D. Utah Sept. 20, 2018); *Welp v. Cigna Health & Life Ins. Co.*, No. 17-80237-CIV, 2017 WL 3263138, *5 (S.D. Fla. July 20, 2017).

Under that standard, the Complaint fails to plausibly allege a violation of the Parity Act. Count II consists of conclusory allegations that often merely regurgitate the language of the Parity Act and its implementing regulations. Courts have generally refused to entertain such

allegations that are "not supported by factual content" and are instead "merely a conclusion of law," finding that such claims are "not entitled to a presumption of truth." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1219 (10th Cir. 2011) (citing *Iqbal,* 556 U.S. at 679–80).

Indeed, on multiple occasions, courts in the District of Utah have elected to dismiss Parity Act claims with language similar or nearly identical to that found in the Complaint in this case. *See Jeff N. v. United Healthcare Ins. Co.,* No. 2:18-CV-00710-DN-CMR, 2019 WL 4736920, at *4 (D. Utah Sept. 27, 2019) (dismissing Parity Act claim where, "[i]nstead of particularized allegations, Plaintiffs' Parity Act claim contain[ed] conclusory and formulaic recitations of the law lacking factual support"); *J.L. v. Anthem Blue Cross*, No. 2:18CV671, 2019 WL 4393318, at *3–4 (D. Utah Sept. 13, 2019) (dismissing Parity Act claim as "vague, conclusory, and 'fail[ing] to provide a sufficient factual basis to support their claim'"); *Peter E.,* 2019 WL 3253787, at *3–4 (dismissing Parity Act claim that was "rife with conclusory and formulaic recitations of the law lacking factual support"); *Kerry W. v. Anthem Blue Cross & Blue Shield,* No. 2:19CV67, 2019 WL 2393802, at *3–5 (D. Utah June 6, 2019) (dismissing Parity Act claim where, "[a]side from legal conclusions, Plaintiffs' Complaint fail[ed] to provide a sufficient factual basis in support of their claim that there was disparate treatment in the way Defendant handled, processed, or evaluated N.W.'s claim for treatment at Elevations in comparison to the way Defendant handles, processes, or evaluates claims for treatment at skilled nursing facilities and inpatient rehabilitation facilities."); *Anne M.*, 2019 WL 1989644, at *3 (dismissing Parity Act claim where the complaint contained "merely conclusory allegations devoid of factual support" and "fail[ed to adequately allege[] facts to support their claim that

9

[defendant] applied less rigorous standards when evaluating analogous medical/surgical claims").

In short, a pleading like Plaintiffs' Complaint that only "offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Kerry W.,* 2019 WL 2393802, at *2 (quoting *Iqbal*, 556 U.S. at 557). Accordingly, Count II should be dismissed.

### 1. Plaintiffs Fail to Identify a Specific Plan Limitation.

To properly plead a Parity Act violation resulting from the denial of coverage for mental health or substance use treatment, a plaintiff must first correctly identify the relevant limitation. *Welp,* 2017 WL 3263138, at *5. Here, Plaintiffs allege that UnitedHealthcare and the Plan violated "the terms of the Plan and its medical necessity criteria" by failing to provide coverage for S.D.'s allegedly "medically necessary treatment" at Solstice. (Compl. ¶ 37.) That allegation, however, does not constitute a limitation required to state a claim under the Parity Act. At its core, Plaintiffs' Parity Act claim is premised on their disagreement with the adverse benefit determination concerning services rendered to S.D. at Solstice. But Plaintiffs' disagreement does not establish a lack of mental health parity.

The Complaint does not identify with specificity how the adverse benefit determination at issue is inconsistent with a benefit determination for medical/surgical treatment in the same classification. Instead, the Complaint rests on the conclusory allegation that:

> Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and [UnitedHealthcare], as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies,

10

standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

(Compl. ¶ 48.) However, that allegation is nothing more than a recitation of the legal standard for a Parity Act claim, devoid of any factual support.

Plaintiffs attempt to bridge that gap by citing a C.F.R. section and broadly claiming that plans are prohibited from limiting coverage for treatment based on "medical necessity, restrictions based on geographic location, facility type, provider specialty [or] other criteria . . . ." (Compl. ¶ 41.) Plaintiffs then allege, without any factual support, that the Plan's "medical necessity criteria for intermediate level mental health treatment benefits are more stringent or restrictive than the medical necessity criteria applied to intermediate level medical or surgical benefits." (*Id.* ¶ 42.) However, Plaintiffs' allegations are insufficient because they are not supported by any facts showing that claims for analogous medical/surgical benefits are treated differently. Plaintiffs do not and cannot identify any Plan terms to support those allegations.

The Plan provides coverage for medically necessary treatment at all levels of care, without regard to whether a claim is medical/surgical or mental health/substance use, while clearly excluding all treatment that is not medically necessary. (*See* Exh. "1" to Exh. "A" at 123-124.) Moreover, the definition of "Covered Health Services" applies equally to treatment both in the mental health context and in the medical/surgical context under the terms of the Plan document. (*Id.*) There is nothing in the Plan that treats mental health and substance use claims disparately from medical/surgical claims based on medical necessity, geographic location, facility type, provider specialty or other criteria, and Plaintiffs' unsupported claims are thus implausible on their face.

11

Plaintiffs' failure to plead facts establishing the first element of their Parity Act claim is, by itself, sufficient reason to dismiss Count II. *See Roy C.,* 2018 WL 4511972, at *3 (dismissing Parity Act claim where plaintiffs "failed to identify any language or provisions in the Plan that create any sort of disparity between medical and surgical treatment versus mental health and substance abuse treatment").

### 2. Plaintiffs Fail to Adequately Plead a Covered Medical or Surgical Practice That is Analogous to Residential Treatment.

In addition, "to survive the dismissal of a Parity Act claim," a plaintiff must allege a medical or surgical analogue to the disputed mental health or substance abuse services. *Id.* at *3; *see also Welp*, 2017 WL 3263138, at *6 ("[A]t the very least, a plaintiff must identify the treatments in the medical/surgical arena that are analogous to the sought-after mental health/substance abuse benefit . . ."). Plaintiffs' Complaint again fails to allege facts to support this essential element of their Parity Act claim.

Instead of identifying a specific "medical or surgical analogue" to "residential treatment" that is covered under the terms of the Plan, Plaintiffs vaguely identify a broad category of medical services, claiming that "sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities" are the "medical/surgical treatment [analogues] to the benefits the Plan excluded for [S.D.'s] treatment." (Compl. ¶ 43). Plaintiffs, however, offer no factual support for their allegation that skilled nursing facilities, inpatient hospice care, and rehabilitation facilities are analogous to mental health residential treatment facilities. Indeed, it is difficult to envision what factual support Plaintiffs could provide for their conclusory, threadbare allegation that end-of-life inpatient hospice care is "analogous" to treatment focused on addressing mental health and substance abuse issues in adolescents.

12

In *Roy C.*, this Court dismissed the plaintiff's Parity Act claim because "[t]he Plan at issue . . . provides mental health services on both an inpatient and outpatient basis. It provides coverage for mental health services for hospitalization, residential treatment, partial hospitalization, and intensive outpatient treatment as required by the Parity Act." 2018 WL 4511972, at *3. While the *Roy C.* court was specifically concerned with an alleged improper denial of coverage for a wilderness program, the court found that the plaintiff's reliance on intermediate services *generally* was insufficient to "allege a medical or surgical analogue that the plan treats differently than the disputed mental health or substance abuse services." *Id.* Likewise, in this case, Plaintiffs' attempt to rely generally on a category of intermediate services is insufficient to state a Parity Act claim.

An even greater flaw in Count II is that the express terms of the Plan *do* provide coverage for the treatment of mental health and substance use claims at all medically necessary levels of care. Plan benefits are available for Covered Health Services, without impermissible restrictions based on "medical necessity, geographic location, facility type, provider specialty, or other criteria." (*See* Compl. ¶ 43; Exh. "1" to Exh. "A" at 123-124.) Plaintiffs cannot sufficiently plead a Parity Act violation when the Plan provides benefits for Covered Health Services, regardless of whether the service is to treat a medical/surgical or mental health/substance use condition. *See Richard K. v. United Behavioral Health,* No. 18CV6318GHWBCM, 2019 WL 3083019 at *12 (S.D.N.Y. June 28, 2019) ("[I]t is apparent from the face of the Amended Complaint that defendants did not 'exclude coverage' for, nor apply a 'categorical limitation' on, mental health treatment at sub-acute residential treatment facilities" when they "covered K.K.'s treatment for approximately two and a half months, after which UBH denied further benefits based on its

13

determination that K.K.'s condition had improved such that residential treatment was no longer medically necessary").

Since Plaintiffs have failed to adequately allege a medical or surgical analogue that the Plan treats differently from the disputed mental health or substance abuse services, Count II must be dismissed on that ground, as well.

### 3. Plaintiffs Fail to Identify a Disparity in the Limitation Criteria Applicable to an Analogous Medical or Surgical Service.

Finally, in order to plead a Parity Act violation, the plaintiff must plausibly allege that the plan treats the medical or surgical analogue "*differently* than the disputed mental health or substance abuse services." *Roy C.,* 2018 WL 4511972 at \*3 (emphasis added); *see Welp*, 2017 WL 3263138, at \*5 (holding that a plaintiff must also "allege a flaw in [the identified] limitation based on a comparison to [the] relevant analogue"). Thus, even assuming, *arguendo*, that Plaintiffs' conclusory allegations were sufficient (which they are not) to satisfy the first two elements of their Parity Act claim, Plaintiffs still fail to allege how any supposed limitation is "flawed" *in comparison to* the analogous medical/surgical services.

Plaintiffs assert that the Plan's medical necessity criteria for mental health treatment benefits are "more stringent or restrictive" than the medical necessity criteria for comparable medical or surgical benefits (Compl. ¶ 42), and that UnitedHealthcare does not exclude or restrict coverage of medical/surgical conditions based on medical necessity, facility type or other criteria "in the manner" in which UnitedHealthcare denied coverage for S.D.'s treatment at Solstice. (Compl. ¶ 43.) However, the allegation that UnitedHealthcare restricted coverage of S.D.'s treatment at Solstice in a different "manner" than it restricts coverage for comparable medical/surgical benefits is flatly contradicted by the express terms of the Plan. Specifically, the

14

Plan clearly excludes *all* treatment that is not a "Covered Health Service," and the same definition for "Covered Health Services" applies to both medical/surgical treatment and mental health treatment. (Exh. "1" to Exh. "A" at 123-124, 76.)

Plaintiffs also contend that the Plan's alleged use of acute care medical necessity criteria in evaluating S.D.'s claims violates the Parity Act "because the Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria." (Compl. ¶ 44.) As with most of the allegations in the Complaint, however, the allegation regarding purported acute medical necessity criteria is a conclusory allegation that the Court should ignore. The Complaint alleges no facts supporting the allegation that the Plan does not impose comparable criteria for treatment at comparable medical/surgical facilities.

As with Plaintiffs in this case, the plaintiffs in *Richard K.* alleged, among other things, that the defendant insurer had "improperly utilized acute care medical necessity criteria for K.'s treatment rather than sub-acute care medical necessity criteria." 2019 WL 3083019, at *11. However, the court in *Richard K.* dismissed the Parity Act claim because, like Plaintiffs' claims here, the "allegations fail[ed] to assert any supporting *facts* that would plausibly suggest that defendants imposed more stringent limitations on inpatient mental health treatment than those imposed on comparable inpatient treatment for medical/surgical conditions." *Id.* (emphasis in original); *see also Mike G. v. Bluecross Blueshield of Texas,* No. 2:17-CV-347 TS, 2019 WL 2357380, at *16 (D. Utah June 4, 2019) (dismissing claim that defendant's acute medical necessity criteria violated the Parity Act where Plaintiffs had shown "no evidence . . . that Blue Cross applied less stringent requirements for medical/surgical benefits"); *H.H. v. Aetna Ins. Co.,*

15

342 F. Supp. 3d 1311, 1320 (S.D. Fla. 2018) (dismissing Parity Act claim where plaintiffs alleged that Aetna used more stringent criteria to evaluate residential treatment centers for mental health than it used to evaluate skilled nursing facilities, but failed to state "what criteria Aetna requires of skilled nursing facilities").

In summary, Plaintiffs have failed to plausibly allege facts sufficient to establish any of the essential elements of their cause of action under 29 U.S.C. § 1132(a)(3) for violation of the Parity Act. Count II should therefore be dismissed.

### 4. The Complaint Also Fails to Allege Facts to Support an "As-Applied" Violation of the Parity Act.

A plaintiff may also state an "as-applied" violation of the Parity Act by alleging "an impermissible mental-health exclusion 'in application'—as opposed to a facial attack relying solely on the terms of the plan at issue." *Anne M.,* 2019 WL 1989644, at *2 (citation omitted). To show an as-applied violation, a plaintiff must allege that "the mental health or substance abuse services at issue meet the criteria imposed by [the] insurance plan and that the insurer imposed *some additional criteria* to deny coverage of the services at issue." *Id.* (quoting *H.H.,* 342 F. Supp. 3d at 1319) (emphasis added). The plaintiffs in *Anne M.* did not adequately allege an as-applied claim because, like the Plaintiffs in this case, they asserted "merely conclusory allegations," such as vaguely claiming that treatment was denied because the defendant insurer "appl[ied] the Plan's medical necessity criteria for mental health disorders in a more stringent way than it applies medical necessity criteria for medical/surgical disorders." *Id.* at *3. (*See also* Compl. ¶ 44.)

Similarly, Judge Nuffer in this District recently dismissed an as-applied Parity Act claim where the plaintiffs alleged violations that are nearly identical to those at issue in this case. *See*

16

*Jeff N.,* 2019 WL 4736920 at *4 (dismissing Parity Act claim where plaintiffs alleged, among other things, that the defendant excluded coverage for the beneficiary's treatment in a different "manner" from how it excluded coverage for medically necessary medical/surgical care, and that the defendant used acute care criteria to deny coverage of the beneficiary's sub-acute treatment).

In dismissing the plaintiffs' claims, the court in *Jeff N.* held:

"[F]actual allegations must be enough to raise a right to relief above the speculative level." The conclusory allegation that limitation criteria for medically necessary care of medical or surgical conditions are not applied "in the manner" that Defendant excluded coverage for M.N.'s treatment does not suffice. Plaintiffs have listed elements of the Parity Act but have failed to make clear to Defendant which particular aspect they allege Defendant to have violated, and by what specific actions. Plaintiffs have also alleged a faulty limitation with respect to sub-acute mental health treatment facilities. But Plaintiffs have failed to show how that allegedly faulty limitation is disparate from limitations in comparable medical and surgical treatment facilities. In failing to make a comparison between limitation criteria for mental health treatment and limitation criteria for medical/surgical treatment, Plaintiffs' Complaint casts too broad a net. Therefore, Plaintiffs fail to allege sufficient specific facts to state a claim under the Parity Act.

*Id.* (internal citations omitted).

As with the plaintiffs in *Jeff N.,* Plaintiffs here have cast too broad a net with no factual support. Like the plaintiffs in *Jeff N.,* Plaintiffs in this case "quote statutory language identifying types of limitation criteria, but they do not allege *how* a disparity arises between criteria [UnitedHealthcare] used to deny coverage for [S.D.'s] treatment and criteria for analogous medical or surgical treatment." *See Jeff N.,* 2019 WL 4736920 at *4 (emphasis in original). Plaintiffs' broad allegations that UnitedHealthcare does not restrict coverage of medical/surgical conditions "in the manner" in which UnitedHealthcare excluded coverage for S.D.'s treatment at Solstice lack essential supporting facts.

17

Even if the Complaint did sufficiently allege (which it does not) a disparity between the medical necessity criteria for mental health benefits and medical/surgical benefits, such a distinction still would not constitute a violation of the Parity Act if the "processes, strategies, standards or other factors" used in imposing the limitation were no more stringently applied in the mental health/substance use setting than in the medical/surgical setting. *See Peter E.,* 2019 WL 3253787, at *4 (dismissing Parity Act claim where "Plaintiffs quote[d] statutory language identifying types of limitation criteria, but [did] not allege . . . how those criteria were more stringently applied than criteria for analogous medical or surgical treatment"); *see also J.L.,* 2019 WL 4393318, at *3–4 (dismissing Parity Act claim where Plaintiffs made allegations in "general terms," but failed to identify "what 'processes, strategies, standards, or other factors' were applied more stringently in Defendant's handling of mental health claims versus medical or surgical claims," or how the "medically necessary standard was applied in a different way").

Indeed, since the Parity Act recognizes that "inherent difference[s]" exist between mental health and medical/surgical treatments, a "difference in requirements is not necessarily an improper limitation on mental health care" as long as the limitations are "applied in a manner that is based on clinically appropriate standards of care." *Michael P. v. Aetna Life Ins. Co.,* No. 2:16-CV-00439-DS, 2017 WL 4011153, at *7 (D. Utah Sept. 11, 2017) (quoting 29 C.F.R. § 2590.712(c)(4)(iii) Example 4). Thus, to the extent that Plaintiffs can be deemed to allege in the Complaint that disparities exist between the Plan's application of medical necessity requirements for mental health benefits and medical/surgical benefits, Count II still fails because Plaintiffs provide no supporting facts to indicate that such differences are "not properly based on [such] clinically appropriate standards." *Id.*

18

Under the Plan, health care services are determined to be "Covered Health Services" when they are "provided for the purpose of preventing, diagnosing or treating Sickness, Injury, Mental Illness . . . or their symptoms" and "consistent with nationally recognized scientific evidence as available, and prevailing medical standards and clinical guidelines." (Exh. "1" to Exh. "A" at 123.) The "scientific evidence" and "prevailing medical standards and clinical guidelines" referred to by the Plan are (a) "the results of controlled Clinical Trials or other studies published in peer-reviewed, medical literature generally recognized by the relevant medical specialty community" and (b) "nationally recognized professional standards of care including, but not limited to, national consensus statements, nationally recognized clinical guidelines, and national specialty society guidelines." (Exh. "1" to Exh. "A" at 123-124.)

UnitedHealthcare relies on "scientific evidence" and "prevailing medical standards and clinical guidelines" to make medical necessity determinations for *all* treatments, including both medical/surgical treatments and mental health/substance abuse treatments. (*Id.*) Despite the fact that further information was available to them,[5] Plaintiffs have provided no facts to show *how* UnitedHealthcare's application of its clinical protocols to review S.D.'s treatment at Solstice was not based on clinically appropriate standards.

---

[5] The Plan document provides that UnitedHealthcare maintains "clinical protocols that describe the scientific evidence, prevailing medical standards and clinical guidelines" supporting its determinations of what qualifies as medically necessary for specific services. (Exh. "1" to Exh. "A" at 124.) Those clinical protocols are available to all Covered Persons, including Plaintiffs, on www.myuhc.com. (*Id.*) The information about the clinical guidelines used in the review of Plaintiffs' claims was available at www.providerexpress.com. A general summary of the processes, strategies, evidentiary standards, and other factors used to apply benefit plan terms and conditions (also known as non-quantitative treatment limitations) with respect to mental health/substance use disorder benefits was available online at www.liveandworkwell.com.

19

Ultimately, Plaintiffs' only support for their allegations is the fact that S.D.'s treatment was not covered after S.D. no longer met the Plan's criteria. But the sole fact that UnitedHealthcare denied coverage for S.D.'s treatment at Solstice—standing alone—is insufficient to show that the medical necessity criteria were inconsistent with, or more restrictive than, the medical necessity criteria for analogous medical/surgical treatments. *See Welp,* 2017 WL 3263138, at \*6. This case does not involve a categorical exclusion of all treatment. *See Michael D.,* 369 F. Supp. 3d at 1175–76 (noting that blanket exclusions within a plan, without explanation, are troubling). Indeed, UnitedHealthcare covered S.D.'s treatment at Solstice for almost two months until UnitedHealthcare, after reviewing all available information, found that S.D.'s condition had improved such that 24-hour care in a residential treatment center like Solstice no longer met the Plan's Guidelines for additional residential treatment coverage. (Compl. ¶¶ 16-17.) To focus only on the outcome, rather than the process, of the Plan's application of its criteria does not state a claim under the MHPAEA. Thus, any as-applied challenge in Count II should be dismissed.

### III.   COUNT II MUST BE DISMISSED BECAUSE IT IS DUPLICATIVE OF COUNT I.

Count II of the Complaint should also be dismissed because adequate relief is available under 29 U.S.C. § 1132(a)(1)(B). Count II asserts a claim under 29 U.S.C. § 1132(a)(3), reciting in cursory fashion various possible equitable remedies. (Compl. ¶ 50). Section 1132(a)(3) permits plan participants to bring a civil action "to obtain other appropriate equitable relief" to redress violations or enforce provisions of ERISA or the terms of an ERISA plan. 29 U.S.C. § 1132(a)(3).

"Generally, 'when a plaintiff can state a claim for relief under 29 U.S.C. § 1132(a)(1)(B), the plaintiff cannot maintain simultaneously a claim under 29 U.S.C. § 1132(a)(3).'" *E.M. v. Humana*, 2019 WL 4696281, *5 (D. Utah Sept. 26, 2019), *citing Lefler v. United HealthCare of Utah, Inc.*, 162 F. Supp. 2d 1310, 1324-25 (D. Utah 2001), *aff'd*, 72 F. App'x 818 (10th Cir. 2003). "This is because 'where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate.'" *Id.* (citations omitted).

Since § 1132(a)(3) authorizes only "appropriate equitable relief," the Tenth Circuit has held that "consideration of a claim under [§ 1132(a)(3)] is improper when the [plaintiff] … states a cognizable claim under [§ 1132(a)(1)(B)], a provision which provides adequate relief for [the] alleged … injury." *Lefler v. United Healthcare of Utah, Inc.*, 72 F. App'x 818, 826 (10th Cir. 2003) (unpublished). *Lefler* is consistent with the Supreme Court's explanation that Section 1132(a)(3) is a "'catchall' remedial section" that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that Section 1132 *does not elsewhere adequately remedy*." *Varity Corp v. Howe*, 516 U.S. 489, 512 (1996) (emphasis added).

This Court recently ruled that a proposed amended Complaint would be "futile" where the Parity Act claim was duplicative of the claim for benefits under Section 1132(a)(1)(B). The Court stated in relevant part:

> Plaintiffs' claims are duplicative because they essentially allege the same injury of denial of benefits and seek the same relief of payment of benefits. Plaintiffs allege no other injury that is separate and distinct from the denial of benefits. Under both claims, Plaintiffs assert that the denial of benefits was unlawful and that they are therefore entitled to a payment of benefits. Moreover, although Plaintiffs list various forms of equitable remedies in their proposed amended complaint [citation omitted], these remedies in effect amount to a determination and payment of benefits. Plaintiffs have thus failed to point to any

21

injury that would not be adequately remedied by the payment of benefits. Accordingly, Plaintiffs' Parity Act claim under § 1132(a)(3) as amended is subject to dismissal as duplicative of Plaintiffs' denial of benefits claim under § 1132 (a)(1)(B), and further amendment of Plaintiffs' complaint would be futile.

*E.M. v. Humana and Northside Hospital Inc. Flexible Benefit Plan*, Case No. 2:18-cv-00789CMR, 2019 WL 4696281, at *5 (D. Utah Sep. 26, 2019).

A plaintiff may only "pursue a claim under § 1132(a)(3) where the claim 'is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under § [1132](a)(1)(B) is otherwise shown to be inadequate.'" *Id.* (citation omitted) Plaintiffs in this case meet neither of those exceptions.

First, Plaintiffs' Parity Act claim is not separate and distinct from the claim for denial of benefits. To determine whether relief is "appropriate" under § 1132(a)(3), courts "must look to the real nature of the relief sought, not its label." *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 321 (2d Cir. 2003). Relief under § 1132(a)(3) is inappropriate where the claim is in reality a "thinly veiled effort to repackage a benefits claim." *Schultz v. Prudential Ins. Co.*, 678 F. Supp. 2d 771, 780 (N.D. Ill. 2010). Here, Count I and Count II both seek to remedy the same injury: denial of monetary benefits allegedly owed pursuant to the terms of the Plan. In Count I, Plaintiffs seek recovery of benefits allegedly due under Section 1132(a)(1)(B) for "failing to provide coverage for [S.D.'s] medically necessary treatment" at Solstice. (Compl. ¶ 37.) In Count II for "equitable" relief, Plaintiffs reference and seek, *inter alia*, an "order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA," an "order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss," an "order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MPHAEA," and an

22

"order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA," i.e., the denial of benefits "totaling over $120,000." (*Id.* ¶¶ 32, 50(d), (f), (g) and (h).) As Plaintiffs' claims are "duplicative because they essentially allege the same injury of denial of benefits and seek the same relief of payment of benefits," Count II should be dismissed. *E. M.,* 2019 WL 4696281, at *5 (dismissing Parity Act claim where plaintiffs "allege[d] no other injury . . . separate and distinct from the denial of benefits").

Second, because Count II ultimately constitutes a claim that UnitedHealthcare violated the Plan and wrongfully denied benefits, § 1132(a)(1)(B) provides adequate relief. Plaintiffs claim to seek a declaration, injunction, reformation, disgorgement, accounting, surcharge, estoppel, and restitution. (Compl. ¶ 50). A declaration, however, is available under § 1132(a)(1)(B). *See Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 763–64 (7th Cir. 2003). Likewise, an injunction would have the same effect as a declaration. *See Rice v. Humana Ins. Co.*, No. A. 07 C 1715, 2007 WL 1655285, *4 (N.D. Ill. June 4, 2007). Reformation is also inappropriate because Plaintiffs have not identified any Plan provisions requiring reformation. *See CIGNA Corp. v. Amara,* 563 U.S. 421, 440–41 (2011) (noting that a court may reform the terms of a plan pursuant to § 1132(a)(3) to remedy "false or misleading information"); *see also K.H.B. v. UnitedHealthcare Ins. Co.*, No. 2.18-CV-000795-DN, 2019 WL 4736801, at *4 (D. Utah Sept. 27, 2019) (finding that a plaintiff "may not repackage a claim for recovery of benefits . . . as a claim for equitable relief under ERISA's catch-all provision, and holding that reformation is only available when plaintiffs adequately allege facts showing that the insurer "suppressed, omitted, or inserted terms that materially affect the substance of the Plan"). Finally, disgorgement, accounting, surcharge, estoppel, and restitution would all

23

ultimately result in the same relief sought under § 1132(a)(1)(B): a determination and/or payment of benefits. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103–04 (2d Cir. 2005) (injunction and restitution inappropriate because "any harm … can be compensated by money damages" under § 1132(a)(1)(B)); *Biglands v. Raytheon Employee Sav. & Inv. Plan*, 801 F. Supp. 2d 781, 785–86 (N.D. Ind. 2011) (finding surcharge to be "the exact same monetary relief sought and available" in the § 1132(a)(1)(B) claim).

Therefore, "although Plaintiffs list various forms of equitable remedies in their . . . complaint . . . , these remedies in effect amount to a determination and payment of benefits." *E. M.,* 2019 WL 4696281, at \*5. Accordingly, Count II of the Complaint should be dismissed as a disguised benefits claim adequately remedied under § 1132(a)(1)(B).

## CONCLUSION

For the foregoing reasons, UnitedHealthcare and the Plan respectfully request that the Court grant their Motion to Dismiss Count II of Plaintiffs' Complaint, and enter an Order dismissing Count II of Plaintiffs' Complaint with prejudice.

## REQUEST FOR ORAL ARGUMENT

Pursuant to DUCivR 7-1(f), UnitedHealthcare and the Plan respectfully request oral argument on this Motion.

RESPECTFULLY SUBMITTED this 22nd day of November, 2019.

PARR BROWN GEE & LOVELESS

By: /s/ Bentley J. Tolk
   Bentley J. Tolk
   David P. Mooers-Putzer

Attorneys for Defendants

24

# CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of November, 2019, a true and correct copy of the

foregoing **MOTION TO DISMISS COUNT II OF PLAINTIFFS' COMPLAINT, AND**

**SUPPORTING MEMORANDUM** was served via electronic service on the following:

> Brian S. King
> Brent Newton
> Nediha Hadzikadunic
> BRIAN S. KING, P.C.
> 336 South 300 East, Suite 200
> Salt Lake City, Utah 84111
> brian@briansking.com
> brent@briansking.com
> nediha@briansking.com

/s/ Bentley J. Tolk

4846-8904-4141 v.1

25