Brian S. King, #4610
Nediha Hadzikadunic #15851
Brent J. Newton, #6950
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
nediha@briansking.com
brent@briansking.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WILLIAM D., individually and on behalf of S.D., a minor,<br><br>        Plaintiff,<br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, and the FORTIVE CORPORATION & SUBSIDIARIES MEDICAL PLAN,<br><br>        Defendants. | PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT<br><br>Civil No. 2:19-cv-00590-DB<br><br>Judge Dee Benson |

Plaintiff William D. ("Bill"), individually and on behalf of S.D. ("S"), a minor, through

his undersigned counsel, and pursuant to DUCivR 7-1(b), submits his opposition to Defendants'

Motion to Dismiss Count II of Plaintiff's Complaint ("Motion to Dismiss") by United Healthcare

Insurance Company ("United") and the Fortive Corporation & Subsidiaries Medical Plan ("the

Plan") (collectively, "United").

**OVERVIEW**

In 2015 and 2016, S.'s symptoms of severe anxiety and depression caused her to self-

harm and attempt suicide on multiple occasions. S. was hospitalized and received inpatient and

outpatient mental health treatment without success in improving her symptoms. In 2017, S. was admitted for residential treatment at Solstice West ("Solstice"). United, the Plan's Claims Administrator, denied benefits by applying acute care criteria to determine the medical necessity of S.'s sub-acute mental health treatment. United moves this Court to dismiss the Second Cause of Action in Bill's Complaint.[1] The analysis below demonstrates that the Complaint contains sufficient facts and allegations to make plausible the Plaintiffs' claims that United violated the Mental Health Parity and Addiction Equity Act ("MHPAEA"). This Court's recent rulings support Bill's MHPAEA claim as separate and distinct from his claim for benefits in the First Cause of Action.

**ARGUMENT**

**I.    THE APPLICABLE LEGAL STANDARD REQUIRES DENIAL OF THE MOTION TO DISMISS.**

Under F.R.Civ.P. 12(b)(6), the allegations of the Complaint are accepted to be true and are interpreted in the light most favorable to the Plaintiffs.[2] The pleading standard requires Bill to allege sufficient facts, plausible on their face, to allow the Court to draw a reasonable inference that United and the Plan are liable for the misconduct alleged.[3] The factual allegations Bill provided in the Complaint are sufficient to "raise [his] right to relief above the speculative level."[4] The purpose of the plausibility requirement that "something beyond the mere possibility of…[United's wrongful denial of benefits and a MHPAEA violation] must be alleged," is to weed out groundless claims, not to impose a higher pleading standard.[5]

---

[1] Docket #2
[2] *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)
[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 & 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
[4] *Id.* at 555
[5] *Id. at* 557-58

United argues that "the Complaint fails to plausibly allege *any* of the elements necessary to plead a violation of the Parity Act."[6] United largely disregards the factual allegations Bill provided in the Complaint when it argues that he failed to identify a treatment limitation, a medical/surgical analog, and a disparity of the alleged treatment limitation.[7] The degree of specificity United requests that Bill demonstrate in the Complaint amounts to nothing less than requiring him to prove a *prima facie* case at the pleading stage. Imposing a stricter pleading standard under Rule 8 is something the Supreme Court advised against in S*wierkiewicz v. Sorema N.A.*[8] "Given that the *prima facie* case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."[9] The comments of the Supreme Court in explaining the pleading standard under Rule 8 apply here:

> [I]mposing the Court of Appeals' heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.[10]

Consequently, Rule 8 only calls for Bill to demonstrate that United plausibly violated MHPAEA and not to prove the actual violations.

## II. BILL SATISFIES THE APPLICABLE LEGAL STANDARDS FOR HIS SECOND CAUSE OF ACTION.

MHPAEA is a subtle and complex statute. The statute and its underlying regulations require parity between mental health and substance use disorders and medical/surgical treatment

---

[6] Motion to Dismiss, docket #8, p. 2 (emphasis in original)
[7] *Id.*
[8] 534 U.S. 506 (2002)
[9] *Id.* at 512
[10] *Id.* at 512

in dealing with both quantitative and nonquantitative treatment limits.[11] The Second Cause of Action in this case deals with Bill's claim that United violated MHPAEA by imposing nonquantitative treatment limitations on S.'s benefits for mental health and substance use disorder treatment that are more stringent than the benefits United provides for medical or surgical treatment.

United argues that "the Complaint fails to plausibly allege a violation of the Parity Act," and that "Count II consists of conclusory allegations that often merely regurgitate the language of the Parity Act and its implementing regulations."[12] United further argues that to plausibly plead a MHPAEA violation, Bill must identify a specific treatment limitation which United imposed only on mental health and substance use benefits, an analogous service in the medical/surgical arena, and a disparity between mental health and substance use benefits as compared to medical/surgical benefits that the alleged treatment limitation caused.[13] In *Michael W. v. United Behavioral Health*, this Court discussed the specific pleading requirements on a MHPAEA claim noting that "various courts have applied differing pleading requirements for Parity Act claims," and held that "[a]bsent any binding Tenth Circuit precedent on the issue, the court rules that Plaintiffs may successfully plead a Parity Act claim under any of the various standards."[14] Even under the pleading standard United proposes, the factual allegations in the Complaint are sufficient to make Bill's MHPAEA claim credible.

United relies on a number of decisions in which this Court found the factual allegations supporting a MHPAEA claim in the respective complaints insufficient and conclusory.[15] United

---

[11] 29 U.S.C. § 1185a(a)(3) and compare 29 C.F.R. § 2590.712(c)(3) involving quantitative treatment limitations with § 2590.712(c)(4) involving nonquantitative treatment limitations.
[12] Motion to Dismiss, p. 8
[13] *Id.*
[14] 2019 U.S. Dist. LEXIS 167186, *53 (D. Utah 2019)
[15] Motion to Dismiss, pp. 9-10

argues that this Complaint contains "language similar or nearly identical"[16] to the language in the respective complaints but does not present any concrete evidence to substantiate its argument. This only underscores the importance of "conducting a case-by-case inquiry in deciding whether a Parity Act claim has adequately been plead."[17] Also, in two of the cases United cites throughout its Motion to Dismiss, *Peter E.*[18] and *Anne M.*,[19] pending before this Court, Judge Nuffer and Stewart, respectively, granted Motions to Dismiss the Plaintiffs' MHPAEA claims. However, in each case the judges gave the plaintiffs leave to amend. The plaintiffs in *Peter E.* and *Anne M.,* filed amended complaints and in each case the defendants renewed their motions to dismiss the MHPAEA cause of action. Judge Nuffer and Judge Nielson (to whom the *Anne M.* case was transferred) each denied the renewed motions to dismiss and ruled that the amended complaints in each case were adequate in presenting plausible allegations that the defendants had violated MHPAEA.[20]

A.     <u>**Bill Identifies a Specific Treatment Limitation Because He Alleges that United Applied Acute Care Criteria to Services Provided at the Sub-Acute Level of Mental Health Care**</u>.

United argues that Bill failed to identify a specific treatment limitation in the terms of the Plan and that "there is nothing in the Plan that treats mental health and substance use claims disparately."[21] In *Peter E. v. United Healthcare Servs.*, this Court explained that "[a] Parity Act claim may allege a *facial violation* (an express limitation written in the plan) or an *as-applied*

---

[16] *Id*. at 9

[17] *A.Z. v. Regence BlueShield*, 2018 U.S. Dist. LEXIS 134669, at *22 (citing *Danny P. v. Catholic Health Initiatives*, 891 F.3d 1155, 1160 (9th Cir. 2018))

[18] Civil no. 2:17-cv-435-DN

[19] Civil no. 2:18-cv-808-HCN

[20] *Peter E. v. United Healthcare Services,* 2019 U.S. Dist. LEXIS 200603 (11/18/19) and *Anne M. v. United Behavioral Health*, civil no. 2:18-cv-808, ECF no. 38, Minute Order denying Motion to Dismiss for Failure to State a Claim

[21] Motion to Dismiss, pp. 11-12

violation (a limitation applied through interpretation of the plan)."[22] Similarly, in *David S. v. United Healthcare Ins. Co.*, the Court stated that "[p]roviders can…commit Parity Act violations two ways; facially, by writing an offending treatment limitation into the plan; and in application, by applying an offending treatment limitation to deny coverage."[23] Accordingly, identifying specific language in the Plan is not a requirement in an as-applied MHPAEA challenge.

Another way United attempts to discredit Bill's MHPAEA claim is by asserting that it is nothing more than a squabble about whether United properly denied S.'s benefits claim adding that "Plaintiffs' disagreement does not establish a lack of mental health parity."[24] United narrows the plausibility analysis to a select few paragraphs as evidence that "Plaintiffs' allegations are insufficient because they are not supported by any facts showing that claims for analogous medical/surgical benefits are treated differently."[25]

United's cursory interpretation of Bill's MHPAEA claim is inconsistent with this Court's emphasis on the need to consider the allegations in the Complaint when read as a whole.[26] United does not pay heed to specific facts in the Complaint that directly relate to and explain how United violated MHPAEA. For example, United ignores paragraphs 44 through 47 which distinctly define the nature of the MHPAEA violation Bill alleges. Specifically, paragraph 44 states that "[t]he actions of United and the Plan requiring that S. satisfy acute care medical necessity criteria in order to obtain coverage for residential treatment violates MHPAEA because

---

[22] 2019 U.S. Dist. LEXIS 200603, at *4 (D. Utah 2019) (emphasis in original)
[23] 2019 U.S. Dist. LEXIS 157046, at *8 (D. Utah 2019); *see also Anne M. v. United Behavioral Health,* 2019 U.S. Dist. LEXIS 76810, *6 (D. Utah 2019) (same); *Kurt W. v. United Healthcare Ins. Co.*, 2019 U.S. Dist. LEXIS 215210, *11 (D. Utah 2019) (Waddoups, J.) ("Plaintiffs are not required to plead a specific plan limitation in order to state a claim for violation of the Parity Act.")
[24] Motion to Dismiss, p. 10
[25] *Id.* at 11
[26] *Melissa P. v. Aetna Life Ins. Co. Group Benefit Plan*, 2018 U.S. Dist. LEXIS 216775, at *7 (D. Utah 2018); *See also Timothy D. v. Aetna Health & Life Ins. Co.*, 2019 U.S. Dist. LEXIS 100388, at *5 (D. Utah 2019) ("In considering a motion for judgment on the pleadings, the court considers the Complaint in its entirety.")

the Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits."

Paragraphs 17, 20, and 30 offer specific language in United's denial letters consistent with reliance on acute rather than sub-acute medical necessity criteria, referring to S. as not presenting a danger of harm to self or others, not being suicidal, or requiring 24-hour nursing care. Paragraphs 25 through 28 provide further factual support for the allegations in paragraphs 44 through 48. Most importantly, the allegations in paragraph 44 are the same allegations this Court found in *David S.*, as sufficient to "identify… the offending treatment limitations that United *applied* to determine that S.S.'s mental health treatments were not 'medically necessary.'"[27] Moreover, in *Peter E.* this Court held that to allege an as-applied MHPAEA challenge it is sufficient to identify analogous medical or surgical treatments "and allege that there is a disparity in their limitation criteria."[28] Therefore, alleging that United applied acute criteria to evaluate M.'s sub-acute mental health treatment is sufficient to plausibly identify a treatment limitation.[29]

This Court confirmed this same principle in *Michael W.*, which is factually and legally on point.[30] As with United in this case, in *Michael W.*, "UBH denied continued coverage for G.W.'s care at…a residential treatment center, because it determined that his condition had improved and he no longer needed residential inpatient care."[31] The Court held that "Plaintiffs have successfully pleaded that this denial may violate the Parity Act," because the complaint alleged

---

[27] 2019 U.S. Dist. LEXIS 157046, at *10-11 (emphasis in original)
[28] 2019 U.S. Dist. LEXIS 200603 at *5
[29] *Id.*
[30] 2019 U.S. Dist. LEXIS 167186
[31] *Id.* at *56

"that UBH used 'acute care medical necessity criteria' as the standard by which it evaluated G.W.'s need for continued treatment at [a residential treatment facility]…[and] that UBH's basis for denying coverage was that G.W. had not shown 'recent dangerous behaviors' and that he 'was not suicidal, homicidal or psychotic.'"[32]

United also denied S.'s continued residential treatment alleging that she "has made progress," that "[h]er acute suicidal thoughts have resolved," that "[s]he was not wanting to harm herself or others," and that "[s]he did not require 24-hour nursing care."[33] As in *Michael W.*, Bill alleged that United applied more stringent requirements for continued care at a residential treatment center than for continued care at an analogous medical/surgical level of care.[34]

The holdings in *David S.* and *Michael W.* are in harmony with the ruling in *Melissa P.*, where the Court explained that to state a plausible claim "a plaintiff need only plead as much of her *prima facie* case as possible based on the information in her possession," explaining that the plausibility standard requires "at least some relevant information to make the claims plausible on their face."[35] This Court affirmed this same principle in *Timothy D.*, finding that the plaintiffs there stated a plausible claim under MHPAEA.[36]

United initially denied S.'s continued treatment at Solstice alleging that she was "no longer endangering the welfare of herself of others," that her "acute suicidal thoughts have resolved," and that she did not "appear to require 24 hour nursing care and supervision."[37] United subsequently upheld the denial alleging that S. "did not require 24-hour nursing care."[38]

---

[32] *Id.*
[33] Complaint, ¶¶ 17, 20, 30
[34] 2019 U.S. Dist. LEXIS 167186, at *56-57; Complaint, ¶¶ 44-47
[35] 2018 U.S. Dist. LEXIS 216775, at *7
[36] 2019 U.S. Dist. LEXIS 100388, at *10-11
[37] Complaint, ¶ 17
[38] *Id.* at ¶ 30

United's denial rationales reflect acute, not sub-acute, medical criteria. These specific undisputed facts, which United takes no notice of, make Bill's MHPAEA claim plausible.

To support their Motion to Dismiss, United attached as Exhibit A, the Declaration of Alexander Marsh, Jr.[39] ("Marsh Decl."), and a copy of the 2017 Summary Plan Description of the Plan ("SPD") as Exhibit 1. The Plan defines residential treatment as treatment which provides "at least the…basic services in a 24-hour per day, structured milieu," which includes room and board, evaluation and diagnoses, counseling, and referral and orientation to specialized community services.[40] The Plan's definition of residential treatment is in line with MHPAEA's Final Rules which define residential treatment as an intermediate, sub-acute level of care.[41] This is the case not only with the Final Rules, but also generally accepted standards of medical practice, and numerous court rulings, including those of this Court.[42] The nature and definition of residential treatment as sub-acute, intermediate mental health treatment contrasts with United's requirement of acute mental health symptoms, including being a danger to self or others, not being suicidal, or needing 24-hour nursing care. These requirements are at odds with the nature of mental health services provided at a less intense, intermediate level of care such as residential treatment.

This is even more significant because the Plan purports to cover medically necessary mental health services in accordance with generally accepted standards of medical practice.[43] Requiring acute mental health symptoms for admission to a sub-acute inpatient level of care is specifically identified by the Department of Labor in the Final Rules as a violation of

---

[39] Docket 8-1
[40] Marsh Decl., Exhibit 1, p.143 of 172 of the ECF document
[41] 78 Fed. Reg. at 68262
[42] *Charles W. v. Regence BlueCross BlueShield of Oregon*, 2019 U.S. Dist. LEXIS 167184 *13-14 (D. Utah 2019) (citing *H.N. v. Regence Blue Shield*, 2016 U.S. Dist. LEXIS 178182 *7-8 (W.D. Wash. 2016))
[43] Motion to Dismiss, p. 5

MHPAEA.[44] That is exactly what United improperly provided as the basis for denying S.'s claim. If the Plan provides coverage for services in accordance with generally accepted standards of medical practice and defines residential treatment as an intermediate, sub-acute level of care, cutting short S.'s mental health benefits by requiring the presence of acute mental health symptoms heightens the plausibility of Bill's claim that United violated MHPAEA: United imposed a nonquantitative treatment limitation on mental health benefits in violation of MHPAEA. MHPAEA's Final Rules prohibits exactly this type of disparate application of "medical management standards limiting or excluding benefits based on medical necessity or medical appropriateness."[45]

In *Wit v. United Behavioral Health,* the Northern District of California held that under generally accepted standards of care, "treatment should not be limited to crisis stabilization and the treatment of acute presenting symptoms but rather, should be aimed at providing effective treatment of the patient's overall condition, including chronic and co-occurring medical and behavioral health conditions."[46] That being the case, United's requirement of acute symptoms for S.'s continued residential treatment at the sub-acute level is not in accordance with generally accepted standards of medical practice.

*Wit* did not involve a claim for a violation of MHPAEA, but it supports the theory of liability Bill presents in his Second Cause of Action in this case. Here, as was the case in *Wit*, United wrongly used acute psychiatric treatment criteria to assess the medical necessity of S.'s sub-acute mental health treatment. The sub-acute residential treatment S. received in this case is

---

[44] 78 Fed. Reg. at 68246 (referencing the illustrative list of nonquantitative treatment limitations that violate MHPAEA and including "limitations on inpatient services for situations where the participant is a threat to self or others")

[45] 29 C.F.R. § 2590.712(c)(4)(ii)(A). *See* also the language of 78 Fed. Reg. at 68246 referenced in fn. 44

[46] 2019 U.S. Dist. LEXIS 35205, at *161-62 (N.D. Cal. 2019)

"for individuals who do *not* pose an imminent risk of serious harm to self or others."[47] United's insistence on using acute rather than sub-acute medical necessity criteria constitutes "processes, strategies, standards, or other factors"[48] to limit mental health or substance use disorder benefits in a way that violates MHPAEA.

At this stage, Bill does not yet have the claims file from United. That being the case, he should not be penalized for the scarcity of information available at the pleading stage without giving him the opportunity to further develop his MHPAEA claim through discovery. In *Kurt W.*, this Court recognized that at the pleading stage, plaintiffs may be missing "pertinent information that will help them fully develop their claims" and refused to "penalize Plaintiffs for not offering facts that are beyond their reach" and dismiss their MHPAEA claim with prejudice.[49] Instead, the Court granted plaintiffs leave to amend their complaint subsequent to defendants providing the information necessary to "cure[] the ambiguities of their current complaint."[50]

Furthermore, this Court also acknowledged that "[c]ourts in this jurisdiction favor permitting Parity Act claims to proceed to discovery to obtain evidence regarding a properly pleaded coverage disparity, considering the nature of MHPAEA claims.[51] The Court held that plaintiffs "are entitled to discovery to prove the Defendants' alleged coverage disparity and [a MHPAEA] violation."[52]

Other district courts expressed similar views. In *Bushell v. Unitedhealth Group., Inc.*, the court counseled 'against a rigid pleading standard," explaining that "[w]hile a plaintiff may

---

[47] *Id.* at *63 (emphasis added)
[48] Complaint, ¶ 48
[49] 2019 U.S. Dist. LEXIS 215210, *17-18
[50] *Id*. at 18-19
[51] *Michael W.*, 2019 U.S. Dist. LEXIS 167186, at *52-53
[52] *Id* at *52

be able to find out what process her insurer used to deny *her* claim, it is much more difficult to find out the process her insurer uses to evaluate analogous medical claims. The purpose of discovery is to allow plaintiffs access to this sort of information."[53] Any other approach "would likely create a serious obstacle to meritorious [MHPAEA] claims."[54]

Bill expressly identified the treatment limitation in multiple paragraphs of the Complaint. United cannot limit the plausibility analysis to a select few paragraphs and allege that Bill failed to plausibly state his MHPAEA claim on cherry-picked information when "the court considers the Complaint in its entirety."[55]

### B.      Bill Identified Analogous Levels of Medical and Surgical Care to Residential Treatment.

United further argues that Bill has not alleged a medical or surgical analog that the Plan treats differently.[56] Instead, United argues that "Plaintiffs vaguely identify a broad category of medical services," and "offer no factual support for their allegation that skilled nursing facilities, inpatient hospice care, and rehabilitation facilities are analogous to mental health residential treatment facilities."[57]

"The Final Rules 'confirmed that skilled nursing facilities are the medical/surgical 'scope of services' analogue for residential mental health treatment centers."[58] In *Joseph and Gail F. v. Sinclair Services Company*, this Court held that "if the [Plan] is going to cover treatment received at a skilled nursing facility, which provides only medical and surgical treatment, then [MHPAEA] requires that it also cover treatment received at a residential treatment facility,

---

[53] 2018 U.S. Dist. LEXIS 51577, at *19 (S.D.N.Y.  2018) (emphasis in original)
[54] *Id.*
[55] *Timothy D.*, 2019 U.S. Dist. LEXIS 100388, at *5
[56] Motion to Dismiss, p. 12
[57] *Id.*
[58] *B.D. v. Blue Cross Blue Shield of Ga.,* 2018 U.S. Dist. LEXIS 16993, at *8 (D. Utah 2018) (citing Preamble, Final Rules, 78 Fed. Reg. at 68246)

which provides only mental health and substance use disorder treatment."[59] In addition, *Melissa P.*,[60] *Timothy D.*,[61] *David S.*, [62] *Peter E.*,[63] *Michael W.*,[64] and *Kurt W.*,[65] all affirm that skilled nursing facilities, inpatient hospice care, and rehabilitation facilities are analogous to the levels of care for which United excluded benefits for S.,[66] and that the allegations of Complaints in those cases were sufficient to identify an analogous level of care on the medical/surgical side.

This Court is not alone. Other courts have also held that the counterpart for residential treatment on the medical/surgical treatment spectrum is skilled nursing and rehabilitation care.[67] Rather than being a conclusory allegation, Bill's assertion that "skilled nursing facilities, inpatient hospice care, and rehabilitation facilities are analogous to mental health residential treatment facilities,"[68] is "an accurate recitation of the law"[69] and is sufficient to identify analogous levels of care on the medical/surgical side. Further, the fact that the Plan provides coverage for mental health treatment at all levels of care is not a barrier to a MHPAEA violation claim "when the Plan…provides benefits…regardless of whether the service is to treat a medical/surgical or mental health/substance use condition."[70] In fact, that is the only context in which the question of compliance with MHPAEA becomes relevant. The question is not whether the Plan on its face provides coverage for all levels of medically necessary mental health treatment. Rather, the issue to be addressed is whether the way United processed residential

---

[59] 158 F. Supp. 3d 1239, 1261 (D. Utah 2016)
[60] 2018 U.S. Dist. LEXIS 216775, at *7-8
[61] 2019 U.S. Dist. LEXIS 100388, at *11-12
[62] 2019 U.S. Dist. LEXIS 157046, *10
[63] 2019 U.S. Dist. LEXIS 200603, *5-6
[64] 2019 U.S. Dist. LEXIS 167186, at *56
[65] 2019 U.S. Dist. LEXIS 215210, *13-14
[66] Complaint, ¶ 43
[67] *See Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 716 (9th Cir. 2012); *Craft v. Health Care Serv. Corp.*, 84 F. Supp. 3d 748, 754 (N.D. Ill. 2015) (comparing receiving nursing care to rehabilitate a broken hip to residential treatment);
[68] Motion to Dismiss, p. 12
[69] *Kurt W.*, 2019 U.S. Dist. LEXIS 215210, *14
[70] Motion to Dismiss, p. 13

treatment versus analogous levels of care for medical/surgical conditions constituted an impermissible nonquantitative treatment limitation that violated MHPAEA. That is the essence of an "as applied" MHPAEA challenge to an ERISA plan's denial of mental health benefits.

**C.** **Bill Sufficiently Pled That United's Treatment Limitation Creates a Disparity in the Availability of Mental Health and Substance Abuse Benefits as Compared to Medical/Surgical Benefits.**

Finally, United argues that "Plaintiffs …fail to allege how any supposed limitation is 'flawed' *in comparison to* the analogous medical/surgical services."[71] *Melissa P.* provides guidance in evaluating whether Bill identified the disparity the treatment limitation created in the availability of mental health benefits as compared to medical/surgical benefits. There, the Court ruled that the plaintiff identified "the disparity in treatment coverage in paragraphs 38, 43, 57-59."[72] These are similar to the allegations Bill pleaded in this case.[73]

In *Anne M.*, this Court acknowledged that plaintiffs "can make an as-applied challenge by alleging that the mental health or substance abuse services at issue meet the criteria imposed by [the] insurance plan and that the insurer *imposed some additional criteria to deny coverage of the services at issue*."[74] Considering that S. received sub-acute mental health treatment at Solstice, United's requirement that she exhibit acute mental health symptoms such as being a danger to self or others, suffers from "acute suicidal thoughts," or "require[s] 24-hour nursing care,"[75] in order to approve benefits for continued sub-acute mental health treatment plainly demonstrate that United imposed "additional" criteria. Using acute inpatient criteria to evaluate a sub-acute level of mental health care creates the disparity that is at the heart of Bill's MHPAEA claim.

---

[71] *Id*. at 14 (emphasis in original)
[72] 2018 U.S. Dist. LEXIS 216775, at *8
[73] Complaint, ¶¶ 25-28, 40-48
[74] 2019 U.S. Dist. LEXIS 76810, at *6 (internal citations omitted) (emphasis added)
[75] Complaint, ¶¶ 17, 30

United should not be allowed to take advantage of the fact that Bill had limited amount of information when he filed the Complaint, especially when United's own actions contributed to the scarcity of information. Namely, on multiple occasions United refused to provide Bill with the criteria for skilled nursing and rehabilitation facilities he requested in the appeal process.[76] To prevail on an as-applied MHPAEA claim Bill "must analyze the guidelines and limitations that [United] place[ed] on coverage for sub-acute medical or surgical treatment and compare them to the guidelines and limitations placed on analogous sub-acute residential mental health treatment."[77] This Court recognizes that "Plaintiffs cannot be expected to plead facts that are in the possession of Defendants, and they will certainly not be punished for not offering those facts when their repeated requests to learn the same have been ignored."[78]

Bill asked United to provide him with the Plan's operating documents including the criteria for skilled nursing and rehabilitation facilities.[79] But United never provided those documents to him.[80]

> Facing a nearly identical situation, this court has determined that "[w]ithout knowing the criteria [the insurer] relies on to evaluate the analogue to [plaintiff's child's] claim for coverage, the Court cannot expect [plaintiff] to allege the nonquantitative treatment limitations [the insurer] applied to those other services with specificity. To require more would prevent any plaintiff from bringing a mental health parity claim based on disparate operation unless she had suffered the misfortune of having her admission to a skilled nursing facility for medical reasons approved and her admission to a residential treatment facility denied and thus would have had personal experience with both standards."[81]

Refusing "to penalize Plaintiffs for not offering facts that are beyond their reach," this Court denied the defendants' motion to dismiss the plaintiffs' MHPAEA claim.[82]

---

[76] Complaint, ¶¶ 19, 29, 33
[77] *Kurt W*., 2019 U.S. Dist. LEXIS 215210, at *16
[78] *Id*. at *17
[79] Complaint, ¶¶ 19, 29
[80] Complaint, ¶ 33
[81] *Kurt W*., 2019 U.S. Dist. LEXIS 215210, at *17-18 (citing *Melissa P.*, 2018 U.S. Dist. LEXIS 216775, *9-10)
[82] *Id*. at *18

Although United attached a copy of the 2017 SPD to its Motion to Dismiss, it failed to provide the medical necessity criteria for residential treatment. Knowing how the Optum Level of Care Guidelines define residential treatment and whether these guidelines indeed require the intensity of mental health symptoms for coverage of continued residential treatment which United articulated in its denial letters would allow the Plaintiffs and this Court's to more thoroughly evaluate whether Bill plausibly stated a MHPAEA violation claim. Providing upon request the medical necessity criteria for both residential treatment and the analogous levels of care for medical and surgical conditions—skilled nursing and rehabilitation facilities—is especially necessary to be able to evaluate an as-applied MHPAEA violation challenge. The Final Rules require production of this information in order for the parties and this Court to evaluate the legitimacy of a MHPAEA claim.[83] Given that the Final Rules specifically require production upon request of the medical necessity criteria for analogous medical and surgical conditions, it is especially clear the Motion to Dismiss lacks merit.[84]

United advances the notion that because the Plan purports to provide benefits in accordance with generally accepted standards of medical practice that in itself is evidence that any possible disparity is based on clinically appropriate standards of care and that it follows it did not constitute a MHPAEA violation.[85] This is a far-fetched argument in an as-applied MHPAEA challenge because the terms of the Plan form no basis for a parity violation claim. United's denial of coverage to S. because she was not acutely suicidal or did not require around-the-clock nursing care cast serous doubt that United relied on "scientific evidence" and

---

[83] 29 C.F.R. § 2590.712(d)(1)-(3)
[84] *E.M. v. Humana & Northside Hosp. Inc. Flexible Benefit Plan,* 2019 U.S. Dist. LEXIS 167121, at *10 (D. Utah 2019)
[85] Motion to Dismiss, pp. 18-19

"prevailing medical standards and clinical guidelines,"[86] when it determined the medical necessity of S.'s treatment. The Optum Level of Care Guidelines United applied are likely the same guidelines the court in *Wit* found "unreasonable and an abuse of discretion because they were more restrictive than generally accepted standards of care."[87]

Furthermore, in light of this Court's decision in *Peter E.*, Bill can sufficiently plead a disparity in this as-applied MHPAEA challenge by alleging that United applied criteria in its mental health coverage determination that deviated from generally accepted standards of medical practice.[88] Bill provided this same allegation in paragraph 47.

To dismiss Bill's MHPAEA claim at the pleading stage eliminates the possibility of full proof at the evidentiary stage. An ERISA-based MHPAEA violation has similar discovery challenges as the employment discrimination case evaluated by the United States Supreme Court in S*wierkiewicz*.[89] The pleading-motion stage is simply not the proper moment to deny plaintiffs the opportunity to prove a MHPAEA claim.[90]

Like the plaintiffs in *Smith v. United Healthcare*, Bill is disadvantaged because some of the facts necessary to prove his MHPAEA violation allegations are "peculiarly within the possession and control of" the defendant in this case.[91] This reality "counsels toward allowing discovery"[92] and against dismissal at this early stage. The reasoning of *Smith* rings true here because the parties dispute which documents are relevant to the Court's review of the merits of

---

[86] Motion to Dismiss, p. 19
[87] 2019 U.S. Dist. LEXIS 35205, at *215
[88] 2019 U.S. Dist. LEXIS 200603, *6
[89] 534 U.S. at 511-12
[90] *Smith v. United Healthcare Ins. Co.*, 2019 U.S. Dist. LEXIS 120151, at *8, 16 (N.D. Cal. 2019)
[91] *Id.* at *16
[92] *Id.*

the case. "[D]ismissal for failure to state a claim under Rule 12(b)(6) is inappropriate where the parties do not even agree on what constitutes the plan documents."[93]

### III.   BILL PROPERLY STATED A CLAIM IN HIS SECOND CAUSE OF ACTION UNDER 29 U.S.C. § 1132(a)(3).

United urges dismissal of Bill's MHPAEA claim under § 1132(a)(3) arguing that it is duplicative of his claim for wrongful denial of benefits under § 1132(a)(1)(B).[94] But Bill's MHPAEA claim involves allegations of a breach of a separate statute involving Congressional intent to protect different policies than ERISA. His MHPAEA claim is qualitatively different from his ERISA claim brought for a remedy of a violation of the terms of the Plan. Bill's MHPAEA claim is not remediable under § 1132(a)(1)(B) because that section of ERISA provides remedies only for violations of "the terms of the plan."

Bill alleges that the application of acute medical necessity criteria to S.'s sub-acute inpatient treatment violated something entirely separate from the terms of the Plan: that act violated MHPAEA because United does not impose acute medical necessity criteria for sub-acute treatment of medical/surgical conditions. That is the factual and legal predicate for Bill's MHPAEA claim. It stands independent of any relief that may or may not be available under the terms of the Plan. As such, United's argument that the MHPAEA claim is merely a "repackaged" claim for benefits under 29 U.S.C. § 1132(a)(1)(B) fails.

#### A.   The Second Cause of Action Under 29 U.S.C. § 1132(a)(3) is not Duplicative of the First Cause of Action Under 29 U.S.C. § 1132(a)(1)(B).

United argues that Bill's claim for equitable relief under § 1132(a)(3) should be "dismissed because adequate relief is available under 29 U.S.C. § 1132(a)(1)(B)."[95] While United

---

[93] *AK v. Behavioral Health Sys.*, 2019 U.S. Dist. LEXIS 92395, at *4 (M.D. Tenn. 2019)
[94] Motion to Dismiss, pp. 20-21
[95] Motion to Dismiss, p. 20

concedes that "Section 1132(a)(3) permits plan participants to bring a civil action 'to obtain other appropriate equitable relief' to redress violations or enforce provisions of ERISA or the terms of an ERISA plan,"[96] United argues that the specific remedies Bill seeks under § 1132(a)(3) are available under § 1132(a)(1)(B).[97] United is just wrong. The notion that a declaration, injunction, reformation, disgorgement, accounting, discharge, estoppel, and restitution would all ultimately result in the same relief sought under § 1132(a)(1)(B),[98] therefore making these remedies unavailable under § 1132(a)(3), has no support in law.

In *Christine S. v. BlueCross BlueShield of N.M.*, this Court addressed the same issue. Judge Parrish declined to dismiss the plaintiffs' MHPAEA claim "because that cause of action is alternative to, rather than duplicative of, Plaintiffs' Section 502(a)(1)(B)[99] denial of benefits claim, and the court cannot rule at the motion to dismiss stage whether the monetary relief that Plaintiffs request under Section 502(a)(1)(B) would be adequate to remedy Plaintiffs' alleged injuries if they were to prevail."[100] The Court analyzed the significance of *Varity Corp. v. Howe*[101] and *Cigna v. Amara*,[102] where "the Supreme Court has twice addressed the relationship between claims brought under Section 502(a)(1)(B) and Section 502(a)(3)," and concluded that "the cases themselves do not establish a categorical rule prohibiting Plaintiffs from pleading two different *causes of action* under Section 502(a)(1)(B)] and Section 502(a)(3).[103]

*Christine S.* reached the same conclusion as the Ninth Circuit in *Moyle v. Liberty Mutual Retirement Benefit Plan* where it articulated that "a key holding in *Varity* was that §

---

[96] *Id.*
[97] *Id.* at 23
[98] *Id.*
[99] The U.S.C. numbering system for ERISA is what Plaintiffs use in this brief. But some courts quote ERISA's terms using ERISA's internal numbering system. Section 502 is the same as 29 U.S.C. § 1132
[100] 2019 U.S. Dist. LEXIS 220144, at *14 (D. Utah 2019)
[101] 516 U.S. 489 (1996)
[102] 563 U.S. 421 (2011)
[103] *Christine S.,* 2019 U.S. Dist. LEXIS 220144, at *23, 27 (emphasis in original)

1132(a)(3) extends to other sections of [ERISA], even when § 1132 does not expressly provide a remedy for those sections. *Varity* did not explicitly prohibit a plaintiff from pursuing simultaneous claims under § 1132(a)(1)(B) and § 1132(a)(3)."[104] Similarly, in interpreting *Amara*, the Ninth Circuit reasoned that "[w]hile *Amara* did not explicitly state that litigants may seek equitable remedies under § 1132(a)(3) if § 1132(a)(1)(B) provides adequate relief, *Amara*'s holding in effect does precisely that."[105]

Recognizing that the circuit split caused the "district courts in and out of the Tenth Circuit [...to be] conflicted regarding the existence of a categorical rule barring plaintiffs from pursuing causes of action under both Section 502(a)(1)(B) and Section 502(a)(3)," *Christine S.* adopted "persuasive authority from sister circuits and other district courts as those decisions apply *Varity*, *Amara*, and *Lefler* to the issue of pleading simultaneous ERISA claims," and held "that the proper interpretation of those cases does not support a categorical rule to dismiss Section 502(a)(3) claims if the plaintiff also pleads a plausible Section 502(a)(1)(B) claim."[106] The Court concluded that "[i]ndeed, it would be premature at the motion to dismiss stage in almost every case to decide the two core issues discussed in *Varity*: whether the claims are duplicative and whether the Section 502(a)(1)(B) claim can adequately remedy the plaintiff's injury or injuries."[107]

If Bill's MHPAEA is dismissed prematurely he may not have the ability to obtain any remedy at all for United's violation of that statute. If Bill prevails on his First Cause of Action and this Court rules that United violated the terms of the Plan in wrongly deciding that S.'s treatment was not medically necessary, the separate question of whether United's actions

---

[104] 823 F.3d 948, 961 (9th Cir. 2016)
[105] *Id.* at 960
[106] *Christine S.,* 2019 U.S. Dist. LEXIS 220144, at *34
[107] *Id.*

violated MHPAEA would remain to be decided: whether United's reliance on the medical necessity criteria for acute mental health treatment imposed nonquantitative treatment limitations on mental health and substance use disorder benefits in a way that violated MHPAEA. Resolution of the First Cause of Action, even if that decision is in the Plaintiffs' favor, does not resolve the MHPAEA issue.

Bill understands and accepts that if he obtains an adequate "make whole" remedy under his First Cause of Action he may not seek equitable relief for the same injury under 29 U.S.C. § 1132(a)(3). This Court has made that clear.[108] But the remedies Bill seeks under MHPAEA are not the same as the monetary remedy he seeks for United's violation of the terms of the Plan. Whereas a claim under 29 U.S.C. § 1132(a)(1)(B) seeks payment of benefits, the appropriate equitable relief the Plaintiffs seek under 29 U.S.C. § 1132(a)(3) involves, among other things, for the court to determine whether it is necessary and proper to enjoin United's ongoing or future violations of MHPAEA. Injunctive relief is appropriate where a statutory violation, "carries a potential for future injury."[109] The Sixth Circuit's reasoning in *Hill v. Blue Cross & Blue Shield*, supports this distinction:

> Award of benefits to a particular Program participant based on an improperly denied claim for emergency-medical-treatment expenses will not change the fact that BCBSM is using an allegedly improper methodology for handling all of the Program's emergency-medical-treatment claims. Only injunctive relief of the type available under § 1132(a)(3) will provide the complete relief sought by Plaintiffs by requiring BCBSM to alter the manner in which it administers all the Program's claims for emergency-medical-treatment expenses.[110]

Consequently, a MHPAEA violation issue in the Complaint is separate and distinct from the question of whether the treatment provided to S. was medically necessary under the terms of

---

[108] *Id.* at *34-35
[109] *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 373 (6th Cir. 2015)
[110] 409 F.3d 710, 718 (6th Cir. 2005)

the policy. Although those two issues are related to some degree, they are certainly not the same. *Amara* also makes clear that "the fact that …[equitable] relief takes the form of a money payment does not remove it from the category of traditionally equitable relief."[111] Even if the Court awards monetary equitable relief under the Second Cause of Action , Bill acknowledges that he is not seeking double recovery. Both an improper application of the terms of the Plan and a violation of MHPAEA may ultimately result in denial of benefits. However, not every denial of benefits based on improper utilization of the terms of the plan amounts to a violation of MHPAEA. United cannot show that any remedy for violation of MHPAEA is available under § 1132(a)(1)(B) rather than §1132(a)(3). In fact, just the opposite is true.[112]

In *Christine S.*, the Court rejected the defendant's claim that the MHPAEA claim is duplicative as "inconsistent with federal pleading rules," and their "generous framework for plaintiffs to plead alternative causes of action."[113] The Court also distinguished *Lefler v. United Healthcare of Utah, Inc.*,[114] on which United relies, noting that *Lefler* was decided before *Amara* "and on a motion for summary judgment after the parties conducted discovery."[115] In *Lefler*, the Tenth Circuit rejected the breach of fiduciary duty claim under §1132(a)(3) because those same "arguments could have been perused under" §1132(a)(1)(B) claim.[116] As in *Christine S.*, "[t]he duplicative claims issue in *Lefler* is not present here because [Bill] can only bring [a MHPAEA] cause of action under [§1132(a)(3)] and those claims cannot be 'repackage[d]' from similar claims from similar claims available under [§1132(a)(1)(B)] cause of action.[117]

---

[111] 563 U.S. at 441
[112] *Michael W.*, 2019 U.S. Dist. LEXIS 167186, *35 (stating that a claim for violation of MHPAEA is properly brought under 29 U.S.C. § 1132(a)(3)); *Joseph F.*, 158 F. Supp. 3d at 1259 n. 118 (same); *A.F. ex rel. Legaard v. Providence Health Plan*, 35 F. Supp. 3d 1298, 1304 (D. Or. 2015) (same)
[113] *Christine S.,* 2019 U.S. Dist. LEXIS 220144, at *39-39
[114] 72 Fed. Appx 818 (10th Cir. 2003)
[115] *Christine S.,* 2019 U.S. Dist. LEXIS 220144, at *30
[116] *Id*. at *30
[117] *Id.* at *41

In addition to *Christine S.,* in *Kurt W.,* this Court also held that the plaintiff's MHPAEA claim was distinct from the claim for recovery of benefits, finding that the remedies the plaintiff sought "are precisely the type of 'other appropriate equitable relief' that ERISA permits Plaintiffs to obtain."[118] The Court recognized that *Varity* supports the proposition that plaintiffs can pursue equitable remedies "not available in other sections of ERISA," and that a MHPAEA claim is distinct from the claim for benefits under §1132(a)(1)(B) "in terms of the nature of the alleged harm, the theory of liability, the ERISA enforcement mechanism, and the relief sought."[119]

United relies on this Court's recent decision in *E.M.,* where Magistrate Judge Romero dismissed the plaintiffs' MHPAEA claim finding it duplicative and alleging "no other injury that is separate and distinct from the denial of benefits."[120] But Magistrate Judge Romero got it wrong that the alleged injury to Bill in the Second Cause of Action is not separate and distinct from his claim for violation of the terms of the Plan. Bill specifically alleges that the actions of United "requiring that S. satisfy acute care medical necessity criteria in order to obtain coverage for residential treatment," a sub-acute level of mental health care violates MHPAEA,[121] resulted not only in a violation of the terms of the Plan but a violation of MHPAEA's parity requirement. To identify whether Bill's claim under § 1132(a)(3) is "based on an injury separate and distinct from the denial of benefits, the Court must consider whether…the remaining remedies that Plaintiffs seek under § 1132(a)(3) —can redress Plaintiffs' injuries in ways that § 1132 (a)(1)(B) cannot."[122] To determine whether the alleged injury stemming from a wrongful denial of benefits

---

[118] 2019 U.S. Dist. LEXIS 215210, at *19-20
[119] Id. at *20-21 (internal citations omitted)
[120] U.S. Dist. LEXIS 167121, at *13; Motion to Dismiss, p. 21
[121] Complaint, ¶ 44
[122] *Alexander v. Terry Law Firm, P.C. 401(k) Profit Sharing Plan*, 2016 U.S. Dist. LEXIS 153868, at *15 (E.D. Tenn. 2016)

is indeed distinct from the injury arising out of a MHPAEA violation, Bill agrees with United that the Court should examine and "look to the real nature" of a MHPAEA claim.[123]

It is well established that when a violation of MHPAEA occurs in the context of employee welfare benefits provided under ERISA governed plans, § 1132(a)(3), not § 1132(a)(1)(B), is the proper section of ERISA under which to bring a claim for enforcement of MHPAEA.[124] Consequently, the framing of the two causes of action in the Complaint, with the First Cause of Action for violation of the terms of the Plan brought under § 1132(a)(1)(B) and the Second Cause of Action for violation of MHPAEA brought under § 1132(a)(3), is proper and necessary based on the terms of ERISA's remedial sections at 29 U.S.C. § 1132(a). Relying on the Seventh Circuit's decision in *Berger v. Xerox Corp. Retirement Income Guarantee Plan*,[125] United argues that Bill could seek a declaration under § 1132(a)(1)(B), and that "an injunction would have the same effect as a declaration."[126] While the *Berger* court reasoned that "declaratory judgment is *normally* a prelude to a request for other relief, whether injunctive or monetary,"[127] the declaration sought was regarding the terms of the plan and not the terms of a statute. That distinction is critical because it is the difference between the remedies under § 1132(a)(1)(B) and those under § 1132(a)(3).

The Supreme Court emphasized in *Amara* that § 1132(a)(1)(B) allows only interpreting and enforcing the terms of the Plan, not changing them.[128] The express language of ERISA distinguishes between a claim for relief brought under "the terms of the plan"[129] from one

---

[123] Motion to Dismiss, p. 22 (citing *Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003))
[124] *Joseph F.,* 158 F. Supp. 3d at 1259  n. 118 (citing *A.F. ex rel. Legaard*, 35 F. Supp. 3d at 1304); *Christine S.,* 2019 U.S. Dist. LEXIS 220144, at *41 (recognizing that "Plaintiffs can only bring their Parity Act cause of action under Section 502(a)(3).")
[125] 338 F.3d 755 (7th Cir. 2003)
[126] Motion to Dismiss, p. 23
[127] 338 F.3d at 763 (emphasis in original)
[128] *Amara*, 563 U.S. at 436
[129] 29 U.S.C. § 1132 (a)(1)(B)

brought to "obtain other appropriate equitable relief … to redress … violations [of ERISA] …or to enforce any provisions…" of ERISA.[130] United failed to provide Bill or this Court with the Plan's medical necessity criteria for both the mental health services at issue in this case and the analogous levels of medical surgical treatment.[131] Without access to this information Bill cannot verify whether those criteria indeed require the presence of acute care symptoms as a precondition for providing payment for sub-acute mental health treatment in a way that does violates MHPAEA. But if there is a disparity in the medical necessity criteria between mental health and medical/surgical conditions, remedying that violation of MHPAEA may require reformation of the terms of the criteria, which Bill seeks under § 1132(a)(3) as another appropriate equitable remedy not available under § 1132(a)(1)(B).

United distinctly fails to recognize the degree to which the Supreme Court added onto its analysis of the relationship between §§ 1132(a)(1)(B) and (a)(3) in *Amara*. That case makes clear that claimants may bring § 1132(a)(3) claims for statutory violations independent of any claim, whether asserted or not, for remedies arising out of the breach of the terms of the ERISA plan in question.[132] The Second Cause of Action in this case is even more clearly entitled to a remedy under (a)(3) because it goes beyond alleging a violation of ERISA and seeks a meaningful remedy for a violation of a completely separate statutory obligation from ERISA: the requirements of MHPAEA.

United does not explain how § 1132(a)(1)(B) could provide an adequate remedy for a MHPAEA violation and would have this Court rule in a manner that forces a choice between two

---

[130] 29 U.S.C. § 1132 (a)(3)

[131] The absence of the medical necessity criteria for both mental health and substance use disorders as well as not having available the medical necessity criteria for analogous levels of care for medical and surgical conditions is especially problematic for United because, as alleged in the Complaint, ¶¶ 19, 29, 33 Bill requested production of those criteria in the prelitigation appeal process and United did not then, and still have not, produced them.

[132] *Amara*, 563 U.S. at 444 (referencing the "flexible approach" equitable principles provided to ensure that courts could "mold the relief to protect the rights of the beneficiary according to the situation involved")

bad options. Either ERISA participants and beneficiaries can never bring a claim for violation of MHPAEA, which is properly brought under (a)(3), in the same case when they also believe there is a separate argument to be made for an ERISA plan violating the terms of the plan in denying benefits or, alternatively, claimants have to bring their claims for violation of MHPAEA in a completely separate lawsuit from their lawsuit for violation of the terms of the Plan brought under (a)(1)(B). The first hinders claimants who believe MHPAEA has been violated from access to federal court. The second impairs judicial efficiency by requiring claimants to maintain two separate lawsuits for two separate statutory violations against the same defendant for conduct arising out of the same treatment setting. Nothing in the case law on which United relies justifies or supports such a poor result.

## **CONCLUSION**

In *Swierkiewicz,* the Supreme Court emphasized that Rule 8's "simplified pleading standard applies to all civil actions," except in cases of fraud or mistake, where Rule 9(b) requires "greater particularity," and that "[the] Court, however, has declined to extend such exceptions to other contexts."[133] Echoes of the reasoning in *Swierkiewicz* are heard in *Smith*, *Melissa P*., and *Kurt W*. [134] At the very least, the factual allegations in Bill's Complaint allege more than enough for the Court to infer United applied the Plan in a way that violates MHPAEA,[135] particularly in light of United's' stonewalling. The Second Cause of Action

---

[133] 534 U.S. at 513

[134] *Smith*, 2019 U.S. Dist. LEXIS 120151, *16; *Melissa P*, 2018 U.S. Dist. LEXIS 216775, at *9 ("[t]o require more [information] would prevent any plaintiff from bringing a mental health parity claim based on disparate operation unless she had suffered the misfortune of having her admission to a skilled nursing facility for medical reasons approved and her admission to a residential treatment facility denied and thus would have had personal experience with both standards"); *Kurt W*., 2019 U.S. Dist. LEXIS 215210, *17-18 (same)

[135] *David S*., 2019 U.S. Dist. LEXIS 157046, at *10

certainly comports with Rule 8 framework which allows plaintiffs to seek remedies based on alternative theories of liability. The Motion to Dismiss should be denied.

Dated this 3rd day of January, 2020.

/s/ Brian S. King
Brian S. King
Attorney for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been delivered via the Court's electronic filing and case management system to the following:

Bentley J. Tolk
David P. Mooers-Putzer
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, Utah 84111

DATED this 3rd day of January, 2020.

s/ Brian S. King