Bentley J. Tolk (6665)
Rodger M. Burge (8582)
David P. Mooers-Putzer (14729)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
btolk@parrbrown.com
rburge@parrbrown.com
dmooers@parrbrown.com

Attorneys for Defendants

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WILLIAM D., individually and on behalf of S.D., a minor, <br><br> Plaintiffs, <br><br> vs. <br><br><br> UNITED HEALTHCARE INSURANCE COMPANY, and the FORTIVE CORPORATION & SUBSIDIARIES MEDICAL PLAN, <br><br> Defendants. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNT II OF PLAINTIFFS' COMPLAINT** <br><br> **(Hearing Requested)** <br><br> Case No. 2:19-cv-00590-DBB <br><br> Judge David B. Barlow |

Defendants UnitedHealthcare Insurance Company ("UnitedHealthcare") and the Fortive

Corporation & Subsidiaries Medical Plan (the "Plan"; together with UnitedHealthcare,

Defendants") hereby submit this reply memorandum in support of Defendants' Motion to Dismiss Count II of Plaintiffs' Complaint (the "Motion").[1]

## INTRODUCTION

Count II (alleged violation of the Parity Act) must be dismissed because (1) it contains nothing more than threadbare recitals of elements and conclusory allegations that are insufficient to state a plausible Parity Act claim;[2] and (2) Plaintiffs have a legally adequate remedy under Count I (their claim for benefits).[3]

## ARGUMENT

## I.    COUNT II DOES NOT STATE A PLAUSIBLE PARITY ACT CLAIM.

Plaintiffs acknowledge that they fail to identify a specific treatment limitation contained in the Plan imposed only on mental health and substance abuse benefits, but not on the relevant medical/surgical analogue. Accordingly, no plausible "facial" Parity Act claim is alleged in the Complaint.[4] Plaintiffs suggest, however, that they sufficiently state an "as-applied" Parity Act claim. (Opp. at 6.) That claim fails to satisfy governing plausibility standards.

---

[1] All defined terms from the Motion and Defendants' opening memorandum supporting the Motion have the same meaning in this reply memorandum.

[2] Citing *Swierkiewicz*, Plaintiffs erroneously argue that Defendants are urging the Court to impose a "stricter" pleading standard than is required. The Motion, however, makes it clear that Defendants are relying on the plausibility standard of *Iqbal* and *Twombly*.

[3] It appears that Plaintiffs' Opposition has a top margin of 1 inch, rather than the "top margin of not less than 1½ inches" required by the applicable local rule. *See* DUCivR 10-1(a)(1). That 1-inch margin makes it challenging to address – within the ten-page limitation – all of the arguments contained in the Opposition.

[4] Moreover, even if the Complaint did plead facts establishing the existence of a plan limitation on mental health/substance abuse treatment that is applied differently than the medical/surgical analogue, such a distinction still would not constitute a violation of the Parity Act if the "processes, strategies, standards or other factors" used in imposing the limitation were no more stringently applied in the mental health/substance use setting than in the medical/surgical setting.

Plaintiffs argue that Defendants "ignore" paragraphs 44 through 47 of the Complaint, and that those paragraphs (particularly paragraph 44) plausibly allege a Parity Act violation. (Opp. at 6-7.) In doing so, Plaintiffs rely on *David S. v. United Healthcare Ins. Co.*, Case No. 2:18-cv-803, 2019 WL 4393341 (D. Utah Sept. 13, 2019). This Court in *Jarrell O. v. Blue Cross Blue Shield of Illinois*, Case No. 2:19-cv-00470-DB-CMR, 2019 WL 291437 (D. Utah Jan. 21, 2020), however, more recently held that the same allegations contained in paragraphs 44 and 47 of the Complaint in this case are insufficient to state a plausible Parity Act Claim.

In *Jarrell O.*, the plaintiffs in paragraph 57 of their complaint (which is virtually identical to paragraph 44 of the Complaint in this case)[5] alleged that defendants violated the Parity Act by "requiring that [M.O.] satisfy acute care medical necessity criteria in order to obtain coverage for residential treatment … because the Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits." *Id.* at \*2.[6] Similarly, as Plaintiffs allege in paragraph 47 of the Complaint in this case, the plaintiffs in *Jarrell O.* alleged in paragraph 59 of their complaint that the defendants reviewed their claims for mental health treatment "under a more restrictive standard," which "resulted in a disparity where equivalent mental health benefits were denied when the analogous levels of medical or surgical benefits would have been paid." *Id.*

In dismissing the Parity Act claim with prejudice, the *Jarrell O.* court ruled that those allegations:

---

*See Peter E.,* 2019 WL 3253787, at \*4. The Complaint is devoid of any specific factual allegations on that point.

[5] Paragraph 44 is also substantially similar to the deficient allegations in *Richard K.*, *Mike G.*, and *H.H.*, which are cited in the Motion at 15-16.

[6] A copy of the complaint in *Jarrell O.* is attached hereto as Exhibit "A."

> lack[ed] factual support for [the complaint's] assertions that disparate treatment existed in the way that Defendants evaluated M.O.'s claim for treatment at CALO in comparison to the way that Defendants evaluate claims for treatment at skilled nursing and rehabilitation facilities. Plaintiffs' Parity Act claim is supported by speculative statements and legal conclusions, which do not constitute well-pleaded facts. [citation omitted].

*Id*. The same holds true here: paragraphs 44 and 47 are conclusory allegations pleading no facts supporting the allegation that the Plan does not require satisfaction of comparable criteria for treatment at comparable medical/surgical facilities. As in *Jarrell O*., Plaintiffs' Parity Act claim should be dismissed with prejudice.

Plaintiffs argue that paragraphs 17, 20 and 30 of the Complaint, which quote portions of the relevant denial letters (the "Denial Letters") from United Behavioral Health ("UBH"), suggest that Defendants relied on acute rather than sub-acute medical necessity criteria.[7] However, Plaintiffs cite no authority or support for their assertion that UBH was applying acute care criteria, and a simple review of the letters shows that they were not.  That failure is fatal to Plaintiffs' Parity Act claim: Plaintiffs base their Parity Act claim on bald, unsupported assumptions as to what constitutes "acute" and what constitutes "sub-acute."

The quoted portions of the Denial Letters do not support Plaintiffs' allegation that Defendants relied on acute, rather than sub-acute, medical necessity criteria. For example, the October 9, 2018 denial of Plaintiffs' second level appeal states that S.D. "had made progress"; she "was doing better"; she "was stable from a medical and mental health standpoint"; she "was participating in treatment"; she "had family support"; she "was able to take care of her needs"; she "did not require 24-hour nursing care"; and she "could have continued care in the MENTAL

---

[7] Although Plaintiffs argue that paragraphs 25 through 28 of the Complaint also provide factual support for their allegations in paragraphs 44 through 48, paragraphs 25 through 28 merely summarize William's level two appeal and are comprised of conclusory statements and legal assertions.

HEALTH OUTPATIENT setting." (Compl. ¶ 30.) The February 12, 2018 Denial Letter states: "Your daughter was doing better. She was working hard. She had made good progress. She was cooperative. She was not wanting to harm herself or others. It seems that her care could have continued in a less intensive setting." (*Id.* ¶ 20.) Without legal citations or other credible support showing that the Denial Letters are relying on acute care criteria, Plaintiffs' Parity Act claim is not plausible. Moreover, the letters reinforce that UBH was not applying acute care criteria (e.g., she was "participating in treatment," had "family support," was "able to take care of her needs," was "working hard," and was "cooperative").

Plaintiffs rely extensively on the District of Utah's decisions in *Michael W., Timothy D.,* and *Melissa P.*, claiming they are "factually and legally similar." However, in *Jarrell O.*, and numerous other factually and legally similar cases, this Court has dismissed Parity Act claims involving the same or substantially similar allegations to those contained in the Complaint. *See John R. v. United Behavioral Health*, Case No. 2:18-cv-35-TC, 2019 WL 6255085 (D. Utah Nov. 22, 2019); *Jeff N. v. United HealthCare Ins. Co.*, Case No. 2:18-cv-00710-DN-CMR, 2019 WL 4736920 (D. Utah Sept. 27, 2019); *E.M. v. Humana*, Case No. 2:18-cv-00789-CMR, 2019 WL 4696281 (D. Utah Sept. 26, 2019); *Roy C. v. Aetna Life Ins. Co.,* Case No. 2:17-cv-1216-DB, 2018 WL 451197 (D. Utah Sept. 20, 2019); *J.L. v. Anthem Blue Cross,* Case No. 2:18-cv-00671-DB-DBP, 2019 WL 4393318 (D. Utah Sept. 13, 2019); *Kerry W. v. Anthem Blue Cross and Blue Shield*, Case No. 2:19-cv-67-DB, 2019 WL 1989644 (D. Utah June 6, 2019).

Plaintiffs argue that the Final Rules define residential treatment as an intermediate, sub-acute level of care. (Opp. at 9.) The cited portion of the Federal Register, however, does not formally "define" residential treatment as an "intermediate, sub-acute level of care," but merely

lists it in passing as a *type* of intermediate service (with no mention of "sub-acute"). Moreover, the Federal Register citation only provides background information and describes comments received in the rulemaking process, but does not constitute a rule itself.  Further, Plaintiffs misstate the commentary in asserting that "[r]equiring acute mental health symptoms for admission to a sub-acute inpatient level of care is specifically identified . . . in the Final Rules as a violation of the [Parity Act]." (Opp. at 9.) The notice merely states that such limitations must be applied consistent with the regulations.  Plaintiffs point to no provision of the regulations that the Plan here violated.[8]

Although the Motion to Dismiss presents a pleading-based challenge, Plaintiffs attempt to argue the substance of their claim by stating that Defendants' medical necessity criteria are "not in accordance with generally accepted standards of medical practice," and Plaintiffs cite the *Wit* case in an attempt to support that argument. (Opp. at 10.) *Wit* did not involve a Parity Act claim (*Id.*) and was decided after a 10-day bench trial during which numerous experts testified on the generally accepted standards of care that apply in behavioral health treatment. The *Wit* Findings are a non-final, non-precedential order from a district court outside of the Tenth Circuit and are not binding on this Court. *See, e.g.*, *Walk v. Thurman*, 2012 WL 3292934, *7 (D. Utah Aug. 10, 2012)

---

[8] The Final Rules provide an illustrative list of Non-Quantitative Treatment Limitations (NQTLs). The language cited by Plaintiffs merely identifies as a potential NQTL, "limitations on inpatient services for situations where the participant is a threat to self or others," but the language does not specify how such a limitation could violate the Parity Act. That language also does not address varying levels of care. More fundamentally, the full sentence states that any such NQTLs "must be applied in a manner that complies with these final regulations." 78 Fed. Reg. at 68246. Plaintiffs, however, mischaracterize the language of the Rules as stating that any limitations on treatment involving "a person's threat of harm to himself or others" would constitute a *per se* violation of the Parity Act. The cited language establishes no such rule; rather, it simply shows that a plaintiff would have to prove that any such limitation is not applied in a manner that complies with the Final Rules. Plaintiffs fail to do so here.

(discussing the doctrine of *stare decisis* and noting that "district court decisions cannot be treated as authoritative on issues of law") (internal citation and quotation marks omitted). Thus, *Wit* is not helpful in evaluating the sufficiency of Plaintiffs' Parity Act claim allegations under the controlling plausibility standard.

Recognizing the deficiencies in Count II, Plaintiffs complain about a purported "scarcity of information" and ask the Court to allow them to conduct discovery in an attempt to obtain adequate evidence to state a plausible Parity Act claim. (Opp. at 11-12, 15-17.) However, each of the Denial Letters informed Plaintiffs that the information about the clinical guidelines used by UBH in its review of Plaintiffs' claims could be found at www.providerexpress.com; that Plaintiffs "have access to [their] plan documents (e.g., [the] Certificate of Coverage or Summary Plan Description), as well as the medical necessity and coverage determination guidelines for both medical and mental health/substance use disorder benefits"; that the "non-quantitative treatment limitations" with respect to mental health/substance use disorder benefits are available online at www.liveandworkwell.com; and that "[a] comparable summary for [Plaintiffs'] medical benefits may be available to [them] from [their] medical plan."[9]

In addition, the issue of scarce information exists at the pleading stage in many lawsuits. The relevant standard is plausibility. If courts were to excuse a failure to state a plausible claim for relief due to a claimed scarcity of information, a motion to dismiss would likely never be granted. Further, Plaintiffs should not be allowed to conduct a "fishing expedition" into a possible Parity Act violation. *See Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151,

---

[9] Copies of the redacted July 17, 2017, February 12, 2018, and October 9, 2018 letters, which are referenced in the Complaint at ¶¶ 17, 20, and 30, are attached hereto as Exhibit "B." The cited language is found on pages 3-4, 6, 14, 16 of Exhibit "B."

1163 (10th Cir. 2010); *John R.*, 2019 WL 6255085, at *7 (rejecting plaintiffs' claimed need for discovery where they were "essentially asking for leave to conduct a fishing expedition, which the court will not allow"). While Plaintiffs cite certain District of Utah cases allowing plaintiffs to proceed with discovery to prove their Parity Act claims, those decisions are at odds with the *Jarrell O.*, *Jeff N.*, *E.M.*, *J.L.*, *Kerry W.*, and *Roy C.* cases (referenced above) in the District of Utah, all of which involved Parity Act claims that were dismissed for lack of plausibility. Count II must be dismissed for lack of plausibility.

## II.   COUNT II FAILS BECAUSE PLAINTIFFS DO NOT SEEK APPROPRIATE EQUITABLE RELIEF UNDER 29 U.S.C. § 1132(a)(3).

Plaintiffs ask the Court to disregard the general rule that "when a plaintiff can state a claim for relief under 29 U.S.C. § 1132(a)(1)(B), the plaintiff cannot maintain simultaneously a claim under 29 U.S.C. § 1132(a)(3)." *See Lefler v. United HealthCare of Utah, Inc.*, 162 F. Supp. 2d 1310, 1324-25 (D. Utah 2001), *aff'd*, 72 F. App'x 818 (10th Cir. 2003). In doing so, Plaintiffs rely heavily on *Christine S. v. BlueCross BlueShield of N.M.*, Case No. 2:18-cv-JNP-DBP, 2019 WL 6974772 (D. Utah Dec. 19, 2019), where Judge Parrish rejected a "categorical" rule prohibiting simultaneous claims under § 1132(a)(1)(B) and § 1132(a)(3). (Opp. at 19-22.) The court in *Christine S.*, however, adopted the minority view from the Second, Eighth, and Ninth Circuits, which simply permitted plaintiffs to pursue simultaneous § 1132(a)(1)(B) and § 1132(a)(3) claims past the motion to dismiss stage. *Christine S.* is at odds with how the majority of the Circuit Courts – the First, Fourth, Fifth, Sixth, Seventh and Eleventh Circuits[10] – have

---

[10] *See Rochow v. Life Ins. Co. N. Am.,* 780 F.3d 364, 371 (6th Cir. 2015) (a plaintiff cannot seek a duplicative or redundant remedy to redress the same injury when she has an adequate wrongful denial of benefits claim under (a)(1)(B)); *Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 108 (4th Cir. 2006) ("*Varity* allows equitable relief when the available remedy is inadequate");

ruled. Moreover, other cases in the District of Utah have dismissed Parity Act claims where an adequate remedy exists under § 1132(a)(1)(B). *See E.M.*, 2019 WL 4696281, at *5 (D. Utah Sept. 26, 2019); *K.H.B. v. UnitedHealthcare Insurance Company*, 2:18-cv-795-DN, 2019 WL 4736801, *4-5 (D. Utah Sept. 27, 2019).

Plaintiffs argue that if their Parity Act claim is dismissed, they may not have the ability to obtain any remedy at all for Defendants' alleged violation of the statute. (Opp. at 20.) Availability of an adequate remedy under § 1132(a)(1)(B) for *Varity* purposes, however, does not mean, nor does it guarantee, an adjudication in one's favor on that claim. *See Katz*, 197 F.3d at 1088-89.

Dismissal of a Parity Act claim is proper here because on the face of the complaint it is clear that an adequate remedy exists for plaintiffs through their (a)(1)(B) claim. *See E.M.*, 2019 WL 4696281, at *5.[11] Plaintiffs argue that the remedies they seek under the Parity Act are not the same as the remedy they seek under Count I. (Opp. at 21.) Specifically, Plaintiffs argue that the "appropriate equitable relief" they seek is an injunction enjoining Defendants' alleged ongoing or future violations of the Parity Act. (*Id.*) However, the crux of Plaintiffs' claims under Counts I and II is that Defendants wrongfully decided that S.D.'s treatment was not medically

*Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) (acknowledging and following the majority view); *LaRocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002) ("if a plaintiff can pursue benefits under the plan pursuant to Section (a)(1)(B), there is an adequate remedy under the plan which bars a further remedy under Section (a)(3)."); *Katz v. Comprehensive Plan of Grp. Ins.*, 197 F.3d 1088-89 (11th Cir. 1999) (affirming dismissal of an (a)(3) breach of fiduciary duty claim because the injury was remediable under (a)(1)(B)); *Tolson v. Avondale Industries, Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (equitable relief under (a)(3) is inappropriate in cases where a plaintiff's injury consists of a denial of benefits and she has adequate relief available through a right to sue under (a)(1)(B)).

[11] The court in *Christine S.* did not outright reject the general rule of *Varity,* but was concerned about a "categorical" rule requiring dismissal of all (a)(3) claims at the pleadings stage where an (a)(1)(B) claim was also being asserted. *See Christine S.*, 2019 WL 6974772, at *6-16.

necessary. Should Plaintiffs prevail under Count I, there would be no need for any type of injunctive relief.

Moreover, Section 1132(a)(1)(B) allows a plan participant or beneficiary to bring a civil action to, *inter alia*, "enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Since Plaintiffs claim to seek an injunction to stop "ongoing or future violations" of the Parity Act, any such relief is available under § 1132(a)(1)(B) through enforcing Plaintiffs' rights under the terms of the Plan and clarifying their rights to future benefits under the terms of the Plan. To hold otherwise would mean that every denial of a benefits claim in the mental health context would create an accompanying claim for equitable relief under § 1132(a)(3).

Plaintiffs suggest that the Supreme Court's decision in *Cigna Corp. v. Amara* somehow contemplates the simultaneous assertion of § 1132(a)(1)(B) and § 1132(a)(3) claims, but that is incorrect. (Opp. at 24-25). In *Amara*, the Supreme Court addressed the very narrow issue of whether reformation of an ERISA plan is a proper remedy under § 1132(a)(1)(B), which it concluded it was not. *See Cigna Corp. v. Amara*, 563 U.S. 421, 438 (2011). Thus, the Amara plaintiffs had no viable § 1132(a)(1)(B) claim.  While the Supreme Court discussed whether § 1132(a)(3) could possibly provide a basis for a remedy like reformation, that discussion was dicta. *See id.* at 442-43 ("We need not decide which remedies are appropriate on the facts of this case…..").[12] *Amara* says nothing about the general rule enunciated in *Lefler* prohibiting § 1132(a)(3) claims where adequate relief is available under § 1132(a)(1)(B).

---

[12] Plaintiffs complain that UnitedHealthcare refused to provide medical necessity criteria for both mental health services and skilled nursing facility care, and that this information might lead to a need to "reform" the Plan/criteria as an "equitable" remedy under § (a)(3). (Opp. at 25.) As

As in *E.M.*, Plaintiffs here fail to allege an injury that is separate and distinct from the denial of benefits, and their Parity Act claim should accordingly be dismissed. *See E.M.*, 2019 WL 4696281, at \*5; *see also K.H.B.*, 2019 WL 4736801, \*4-5 (D. Utah Sept. 27, 2019) (dismissing claim for equitable relief under § 1132(a)(3) arising from alleged violations of the Parity Act where equitable relief claim was duplicative of § 1132(a)(1)(B) recovery of benefits claim); *John R. v. United Behavioral Health*, Case No. 2:18-cv-35-TC, 2019 WL 6255085, \*7 (D. Utah Nov. 22, 2019) (noting that the "question of whether Charlie's treatment was medically necessary is properly addressed under Plaintiffs' ERISA claim"). Although Plaintiffs in this case list various forms of equitable remedies in the Complaint, those remedies lead to and/or constitute a determination and payment of benefits. Plaintiffs fail to point to any alleged injury in this case that would not be adequately remedied under § 1132(a)(1)(B).

## CONCLUSION

For the foregoing reasons, and the reasons enumerated in the Motion, UnitedHealthcare and the Plan respectfully request that the Court grant the Motion.

RESPECTFULLY SUBMITTED this 3rd day of February, 2020.

PARR BROWN GEE & LOVELESS

By: /s/ Rodger M. Burge
     Bentley J. Tolk
     Rodger M. Burge

Attorneys for Defendants

---

explained above, that information was generally available online. Plaintiffs apparently failed to utilize the information that was available to them.

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of February, 2020, a true and correct copy of the

foregoing **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNT**

**II OF PLAINTIFFS' COMPLAINT** was served via electronic service on the following:

> Brian S. King
> Brent Newton
> Nediha Hadzikadunic
> BRIAN S. KING, P.C.
> 420 East South Temple, Suite 420
> Salt Lake City, Utah 84111
> brian@briansking.com
> brent@briansking.com
> nediha@briansking.com

/s/ Rodger M. Burge

4839-4250-3347 v.1