IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| WILLIAM D.; and S.D., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED HEALTHCARE INSURANCE COMPANY; and FORTIVE CORPORATION & SUBSIDIARIES MEDICAL PLAN, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [8] MOTION TO DISMISS** <br><br> Case No. 2:19-cv-00590-DBB-JCB <br><br> District Judge David Barlow |

Plaintiffs allege that Defendants improperly denied benefits for mental health treatment services received under an employee welfare benefits plan. Accordingly, Plaintiffs seek recovery of the costs of these services under the Employee Retirement Income Security Act of 1974 (ERISA) and the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (Parity Act). Before the court is Defendants' motion to dismiss Plaintiffs' second cause of action, the Parity Act claim. Because Plaintiffs have not alleged a plausible Parity Act cause of action, the court grants Defendants' motion and dismisses that claim. However, Plaintiffs are granted leave to amend the Complaint to correct the pleading deficiency.

## BACKGROUND

Plaintiff S.D. is the child of William D.[1] William D. is a participant in a health care plan (the Plan) and S.D. is a beneficiary.[2] The Plan is a self-funded employee welfare benefits plan

---

[1] Complaint at ¶ 1.

[2] *Id.* at ¶ 3.

under ERISA.³ United Healthcare Insurance Company (United) was the claims administrator for the Plan during the treatment at issue.⁴

With United's approval, S.D. was admitted to and received treatment at Solstice West (Solstice), a residential treatment facility in Utah.⁵ Solstice provides subacute inpatient treatment to adolescents with mental health, behavioral, or substance use problems.⁶ S.D. received treatment at Solstice from May 19, 2017 to April 5, 2018.⁷ In a letter dated July 17, 2017, United (or a subsidiary, United Behavioral Health) denied S.D.'s claims for payment of medical expenses for treatment at Solstice after July 10, 2017.⁸ The United reviewer stated:

> Your child was admitted for treatment of depression. After talking with your child's doctor's designee, it is noted your child has made progress and that your child's condition no longer meets Guidelines for further coverage of treatment in this setting. She is no longer endangering the welfare of herself or others. She is able to understand and participate in her care. She is attending groups and taking medications as prescribed. Her acute suicidal thoughts have resolved. No recent medication changes have occurred. She does not appear to require 24 hour nursing care and supervision for her remaining symptoms and can continue her recovery in a less restrictive setting. Your child could continue care in the Mental Health Intensive Outpatient Program setting.⁹

Plaintiffs submitted a level one appeal challenging the denial of payment for treatment at Solstice.¹⁰ Plaintiffs noted that S.D. entered Solstice with United's approval and argued that S.D.'s condition did not suddenly change on July 10, 2017.¹¹ Plaintiffs also requested the Plan's

---

³ *Id.*

⁴ *Id.* at ¶ 2.

⁵ *Id.* at ¶ 4.

⁶ *Id.*

⁷ *Id.*

⁸ *Id.* at ¶¶ 5, 17.

⁹ *Id.* at ¶ 17.

¹⁰ *Id.* at ¶ 18.

¹¹ *Id.*

governing and operation documents, including the mental health and substance use criteria.[12] On February 12, 2018, United upheld its denial of payment.[13] The reviewer wrote:

> The non-coverage determination for residential level of care will be upheld on 07/10/2017 and forward. This is based on Optum Level of Care Guidelines for Residential Treatment of Mental Health Disorders and the Optum Common Criteria and Clinical Best Practices for All Levels of Care Level of Care Guidelines. Your daughter was doing better. She was working hard. She had made good progress. She was cooperative. She was not wanting to harm herself or others. It seems that her care could have continued in a less intensive setting.[14]

Following a level two appeal,[15] United again upheld the denial of payments for the Solstice treatment.[16] The reviewer wrote:

> Based on the Optum Level of Care Guideline for the MENTAL HEALTH RESIDENTIAL TREATMENT CENTER Level of Care, it is my determination that that [sic] no further authorization can be provided from 7/10/17. Your child was admitted for treatment of problems with her mood. After reviewing the available information, it is noted your child had made progress and that your child's condition no longer met Guidelines for further coverage of treatment in this setting. She was doing better. She was stable from a medical and mental health standpoint. She was participating in treatment. She had family support. She was able to take care of her needs. She did not require 24-hour nursing care. Your child could have continued care in the MENTAL HEALTH OUTPATIENT setting.[17]

Despite Plaintiffs' requests, United never provided Plaintiffs copies of the Plan documents or medical necessity criteria.[18]

Plaintiff filed this action on August 22, 2019. In their second cause of action, Plaintiffs allege that "the Plan's medical necessity criteria for intermediate level mental health treatment benefits are more stringent or restrictive than the medical necessity criteria applied to

---

[12] *Id.* at ¶ 19.

[13] *Id.* at ¶ 20.

[14] *Id.*

[15] *Id.* at ¶¶ 21–29.

[16] *Id.* at ¶ 30.

[17] *Id.* at ¶ 30.

[18] *Id.* at ¶ 33.

intermediate level medical or surgical benefits."[19] Plaintiffs also allege that comparable medical benefits under the Plan include "sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities."[20] "For none of these types of treatment does United exclude or restrict coverage of medical/surgical conditions based on medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner United excluded coverage of treatment for S. at Solstice."[21]

Plaintiffs generally contend that United applied acute medical necessity criteria to the subacute residential treatment while not requiring the same heightened criteria for those seeking subacute medical treatment: "When United and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice."[22]

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[23] Dismissal is appropriate when the complaint, standing alone, is insufficient to state a claim upon which relief may be granted.[24] To be facially plausible, each claim must be supported by well-pleaded facts allowing the court to "draw the reasonable inference that the defendant is liable for

---

[19] *Id.* at ¶ 42.

[20] *Id.* at ¶ 43.

[21] *Id.*

[22] *Id.* at ¶ 47.

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[24] *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.").

the misconduct alleged."[25] A claim is deficient and subject to dismissal if a plaintiff offers in support only "labels and conclusions," "a formulaic recitation of the elements," or "naked assertions devoid of further factual enhancement."[26] Reviewing a motion to dismiss, the court construes the complaint in favor of the plaintiff.[27]

## DISCUSSION

Defendants request dismissal of Plaintiffs' second cause of action, which alleges a violation of the Parity Act. This claim involves alleged discrimination against mental health treatment compared to other medical treatments in Defendants' application of the Plan. Defendants also argue that Plaintiffs cannot assert simultaneous ERISA and Parity Act claims. Because the court is dismissing the Parity Claim for failure to state the well-pleaded facts required under the *Iqbal*/*Twombly* pleading standard, it does not reach Defendants' second argument.

### A. Plaintiffs Have Not Alleged a Plausible Parity Act Claim.

The Parity Act requires "treatment limitations applicable to . . . mental health or substance use disorder benefits" be "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits."[28] In other words, "the Parity Act prevents

---

[25] *Iqbal*, 556 U.S. at 678.

[26] *Id.* (citations, brackets, and internal quotation marks omitted).

[27] *Ash Creek Min. Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992).

[28] 29 U.S.C. § 1185a(a)(3)(A)(ii); *see* 29 C.F.R. § 2590.712(c)(2)(i) (prohibiting a group health plan from applying "any financial requirement or treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant financial requirement or treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification").

insurance providers from writing or enforcing group health plans in a way that treats mental and medical health claims differently."[29]

A plaintiff may succeed on a Parity Act claim by establishing that the benefits plan, on its face, discriminates against mental health treatment or coverage, or by showing that "the plan is discriminatory in application."[30] In this case, Plaintiffs' Parity Act claim is not based on the terms of the benefits plan itself. Rather, Plaintiffs allege that Defendant applied otherwise neutral policy terms in a discriminatory way, disfavoring mental health treatment.[31] A plausible Parity Act claim under an as-applied theory requires the following allegations:

> (1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health/substance use disorder benefits; (3) the defendant applied a facially-neutral plan term more restrictively to limit mental health/substance use disorder benefits; and (4) defendant applied the same facially-neutral plan term to medical/surgical treatment in the same classification as—or at least analogous to—the mental health/substance use disorder treatment in question.[32]

Defendants do not challenge the first two elements, but argue Plaintiffs have not alleged facts showing that claims for mental health services are treated differently than medical claims.

---

[29] *David S. v. United Healthcare Ins. Co.*, 2019 WL 4393341, Slip Copy at *3 (D. Utah Sept. 13, 2019).

[30] *Peter E. v. United HealthCare Servs., Inc.*, 2019 WL 3253787, Slip Copy at *3 (D. Utah July 19, 2019); *Anne M. v. United Behavioral Health*, 2019 WL 1989644, Slip Copy at *2 (D. Utah May 6, 2019); *see also* 29 C.F.R. § 2590.712(c)(4)(i) (prohibiting a health plan from imposing nonquantitative treatment limitations more stringently to mental health and substance use disorder benefits than comparable medical/surgical benefits "under the terms of the plan (or health insurance coverage) as written" or "in operation, any processes, strategies, evidentiary standards, or other factors used in applying the [limitation]").

[31] *See* Complaint, ECF No. 2 at ¶¶ 46–48.

[32] *M.N. v. United Healthcare Ins.*, 2020 WL 1644199, Slip Copy at *4 (D. Utah Apr. 2, 2020); *see* 29 U.S.C. § 1185a(a)(3)(A)(ii) (requiring mental health and substance use disorder treatment be "no more restrictive" than medical surgical benefits); *Vorpahl v. Harvard Pilgrim Health Ins. Co.*, 2018 WL 3518511, at *4 (D. Mass. July 20, 2018) (unpublished) (observing that the plaintiff alleged defendant "differentially applies a facially neutral plan term" in an as-applied Parity Act challenge); *Welp v. Cigna Health & Life Ins. Co.*, 2017 WL 3263138, at *6 (S.D. Fla. July 20, 2017) (unpublished) (requiring a plaintiff to identify, "at the very least, . . . the treatments in the medical/surgical arena that are analogous to the sought-after mental health/substance abuse benefit and allege that there is *a* disparity in their limitation criteria"); *see also* 29 C.F.R. § 2590.712(c)(2)(i) (prohibiting limitations to mental health and substance use disorder financial requirements or treatments "that is more restrictive than the predominant financial requirement or treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification" (emphasis added)).

As an initial matter, Defendants argue that Plaintiffs have failed to plead a medical/surgical analog to a residential treatment center. Specifically, they contend that Plaintiffs have offered no facts supporting the relevant analogous treatment or services and argue that Plaintiffs' identification of skilled nursing facilities, inpatient hospice care, and rehabilitation facilities are categories too broad to be considered. At this stage in the litigation, this requirement is not as onerous as Defendants assert. Plaintiffs must allege a comparator class of medical/surgical services against which Defendants' treatment of mental health and substance abuse services can be assessed. That is, Plaintiffs must allege that "defendant applied the same facially-neutral plan term to medical/surgical treatment in the same classification as—or at least analogous to—the mental health/substance use disorder treatment in question."[33] The comparators, Plaintiffs allege, includes skilled nursing facilities and rehabilitation care.

Defendants also argue that Plaintiffs have not plausibly alleged Defendants' disparate treatment of mental health care and comparable medical care. Plaintiffs asserting an as-applied claim for discrimination generally must do more than state conceptually that their mental health services were treated worse than other services. They must allege facts showing how that happened. In other words, they must plead facts involving actual, real-world, discrimination, not just a theoretical possibility. While extensive, specific facts are not required, "some facts are."[34] The Supreme Court has made it clear that pure notice pleading is insufficient post-*Iqbal/Twombly*, explaining, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[35]

---

[33] *M.N.*, 2020 WL 1644199, at *4.

[34] *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

[35] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In this case, Plaintiffs have alleged sufficient facts regarding their own experience, but no well-pleaded facts regarding the comparator medical classification. The Complaint contains only conclusory statements about the alleged as-applied discrimination involving the comparator individuals or group. Plaintiffs offer conclusions like: "the Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits," and United's denial "process resulted in a disparity where equivalent mental health benefits were denied when the analogous levels of medical or surgical benefits would have been paid."[36] Each of these conclusions says the same thing—Defendant treats individuals seeking medical or surgical benefits differently—while providing no factual allegations about such disparate treatment actually happening.

Plaintiffs' "general assertions" of differential treatment, "without any details whatsoever" of how Defendant treated comparator medical claims, are "insufficient to survive a motion to dismiss."[37] A legal conclusion "couched as a factual allegation" need not be accepted as true in the context of a motion to dismiss, and conclusory statements are insufficient under *Iqbal* and *Twombly* to carry a plaintiff's burden under Rule 8.[38] Facts about the defendant's conduct with respect to mental health treatment coverage are absolutely necessary, but alone are not sufficient to state a Parity Act claim because they form only part of the required factual pairing. Although Plaintiffs identify skilled nursing facilities, inpatient hospice care, and rehabilitation as medical

---

[36] Complaint at ¶¶ 44, 47.

[37] *See Khalik*, 671 F.3d at 1193.

[38] *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); *Iqbal*, 556 U.S. at 678–79 (explaining that the relaxed pleading requirements in Rule 8 of the Federal Rules of Civil Procedure "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

or surgical analogs to the residential treatment at issue, they allege no facts regarding these comparator treatments. Without some facts about actual, as-applied, analogous medical treatment coverage, other than labels and conclusions, there can be no comparison and hence no claim. That is, the court requires "plausible grounds to infer" Defendants actually applied a more restrictive treatment limitation to mental health benefits than it applied to comparable medical/surgical benefits.[39]

### B. Plaintiffs Are Granted Leave to Amend Their Complaint.

Plaintiffs allege that "the Plan's medical necessity criteria for intermediate level mental health treatment benefits are more stringent or restrictive than the medical necessity criteria applied to intermediate level medical or surgical benefits."[40] In their appeals of the denial of benefits, Plaintiffs requested copies of Plan documents, "including any medical necessity criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities."[41] Because these documents have not been provided, and because this is Plaintiffs' first Complaint, Plaintiffs are granted leave to amend their Complaint.

### ORDER

Defendants' motion to dismiss is GRANTED and Plaintiffs' second cause of action is dismissed without prejudice.[42] Plaintiffs are granted leave to amend their Complaint.

---

[39] *See Twombly*, 550 U.S. at 556.

[40] Complaint at ¶ 42.

[41] *Id.* at ¶¶ 19, 29, 33.

[42] ECF No. 8.

Signed August 17, 2020.

BY THE COURT

_____
David Barlow
United States District Judge